JOHN A. MORSE and others, *vs.* WARNER MOORE.

Sagadahoc.    Opinion May 26, 1891.

*Sale.    Warranty.    Acceptance.    Waiver.    Damages.*

Where a seller contracts to deliver at a certain time and place good, clear, merchantable ice, it is a warranty, or a condition precedent of the nature and effect of warranty, that the ice afterwards delivered is of the kind and quality described in the contract.

The warranty survives acceptance; the vendee by accepting the ice is not precluded, in an action by the vendor for the contract price, from setting up a breach of the warranty or condition, in partial or total defense of the action.

The fact of acceptance by the vendee may be evidence tending to show complete performance of the contract by the vendor or to show a waiver of more exact performance, the force and effect of the fact as evidence depending upon the circumstances peculiar to each case.

The doctrine that, in an executory contract for the sale of goods, an acceptance by the vendee is a waiver of deficient performance by the vendor, applies only where the deficiency of performance is formal rather than essential, such as may relate to the time, place or manner of delivery, or affect the taste and fancy of the purchaser merely, or consist of some omission that produces no substantial loss or injury.

A vendor delivered under a contract to sell clear, merchantable ice, deliverable at a seaport in Maine, two cargoes of ice, to be shipped to Richmond, Va., which were taken at the place of delivery by vessels procured by the vendee, who did not inspect the ice at the place of shipment, although there was sufficient opportunity to do so; *Held*: that in an action for the contract price the vendee can set up the vendor's failure to deliver as good ice as the contract called for, in reduction of the damages recoverable.

ON EXCEPTIONS.

This was an action of assumpsit to recover for two cargoes of ice, under a written contract which appears in the opinion of the court. The verdict was for the plaintiffs, for the full contract price

with interest. The defendant contended, at the trial, that the ice shipped was not such as was called for by the contract; and that its quality was such, on account of excessive sap, that it had no market value and was worthless when loaded on board the vessels in this State, or was at least worth very much less than the contract price. Both cargoes were discharged in March, 1888, at Richmond, Va., and placed by the defendant in his ice-house. He denied that the ice was accepted. Upon the question of acceptance, the defendant offered the following letters and telegram, which were received by the plaintiffs. The telegram and the parts of the letters enclosed in brackets were admitted by the court: and the rest of the letters were excluded.

"[Richmond, Va., March 13, 1888.

"Mr. Jno. A. Morse, Bath, Maine :

"Dear Sir : The 'Hyde's' cargo is worse as it goes down. The sap averages five inches on each cake. Please telegraph me what to do about 'Crockett' cargo. She is due, and if as bad as 'Hyde' I do not want it.] Do not send any more unless you can send ice up to contract. Please wire me on receipt of this what you will do. It is not only a loss on cost of ice but freight also and storing; the top tiers as white as snow as soon as the sun strikes it.        Yours,        WARNER MOORE."

"Received at Bath, Maine, March 22nd, 1888."

"Dated at Richmond, Va., 21."

"To J. A. Morse :

"Crockett arrived; more sap than 'Hyde's'. What shall I do with it? Answer.        WARNER MOORE."

"[Richmond, Va., March 21, 1888.

"Mr. J. A. Morse, Bath :

"Dear Sir : I telegraphed you, 'Crockett arrived. More sap than Hyde's. What shall I do with it? Answer.' I wrote you several days ago about the ice but no reply.] I measured several cakes and they have from four to six inches of sap. Haley of Gardiner, is here and I am sorry to say he has seen it, and is using his influence against my wagons. It is awful. Why did you send me such stuff? My manager, Mr. Gaubert,

came from Gardiner. He was with Haynes and DeWitt Co. for years and he never saw such ice shipped before. I am sorry you unload this bad ice on me. My contract calls for prime quality. Answer by first mail. Oblige,

WARNER MOORE."

The defendant was called as a witness to prove that he had not accepted the ice, and was asked what he did with the cargoes after they were discharged at Richmond, and after the telegram and letter dated March 21st; but upon objection the court excluded the questions.

Upon this point the following instructions were given to the jury: "Was it clear, merchantable ice, within the meaning of the term as used among merchants? If so, then perhaps that may end any further consideration of the case; because it was delivered on board the defendant's vessel and carried away by him, and you may be satisfied from the evidence, that has been submitted to you, was used by him in some way.

"If, under the circumstances he takes the commodity and carries it away to a distant state and unloads it from the vessels and puts it into his own ice-house and commences to deliver that as his own property, what would you, and what do you, infer as to the question of acceptance under the contract?"

The defendant claimed that the ice in controversy had from three to four inches of sap or snow ice upon it as an average and that quite a portion of it had from six to eight inches of sap upon it, and that for these reasons it was not merchantable and was valueless. This was denied by the plaintiffs. The defendant contended, also, that he could receive the ice and if it was not of the quality required by the contract, that in this action against him for the price, he could prove the fact, either in diminution of damages, or in full answer to the action, if the ice was of no value. Upon this branch of the case the presiding justice instructed the jury as follows:

"He cannot under a contract like this receive the property called for by the contract and accept it, and then turn round and say that he is not bound to pay the price which the contract calls for. . . . . .

"It has been contended to you by counsel, that the defendant might receive this property and keep it, use it and sell it, and still it is open to him to show that it was of no value when he received it and, therefore, that he is not required to pay anything. I do not understand that to be the law. That may be and is the rule of law, when a contract of sale is executed with a contract of warranty of the thing sold; then the warranty goes to the purchaser as his protection against defects that may be discovered in the thing sold. But this is not an executed contract, this written. contract between the parties. It was executory." "It is like a contract for sale by sample, where a merchant agrees to sell a certain commodity which shall conform to a sample which he delivers to the purchaser. . . . . . Still if he finds it does not in all respects conform to the sample he has the right of accepting it, and if he does accept it as a compliance with the contract, he is bound to pay the contract price.

"Considering all the facts as shown to you, you must determine, if you are not fully satisfied that the ice in all respects conformed to the terms of the contract, whether this defendant accepted it under the contract so as to preclude him from throwing it back onto the hands of the plaintiff.

"When he took the property and carried it away the property passed to him."

"If you do find an acceptance under the rules I have given you, I say to you that the defendant is bound to pay the contract price."

"If you find an acceptance of the property by the defendant, then he is liable for the contract price."

The defendant excepted to these rulings and instructions.

*C. E. Littlefield*, for defendant.

Warranty: *Bryant* v. *Crosby*, 40 Maine, 18; *Randall* v. *Thornton*, 43 Maine, 230; *Gould* v. *Stein*, 149 Mass. 570; *Henshaw* v. *Robins*, 9 Met. 83; *Weimer* v. *Clement*, 37 Penn. 147 (S. C. 78 Am. Dec. 411); *Shippen* v. *Bowen*, 122 U. S. 575; 2 Sch. Per. Pro. (2 Ed.) § 331; *Filley* v. *Pope*, 115 U. S. 213; 2 Benj. Sa. § § 932, 966, and cases cited.

Remedy : In instructing the jury the court may have had in mind the principle formerly held in England, that where the vendee has the right of rescission and fails to exercise that right, he waives his right to other remedies against the vendor. The contrary rule is now held in England, and it is now well settled there as well as in this country, that in such cases the vendee has three courses open to him, any one of which he may pursue. He may refuse to receive the article at all ; he may receive it and bring a cross action for the breach of the warranty ; or he may, without bringing a cross action, use the breach of warranty in reduction of damages in an action brought by the vendor for the price. *Pope* v. *Allis*, 115 U. S. 363 (S. C. Coop. Ed. Book 29, p. 393, and note). Sales by sample : Camp. Sa. 305, and note to *Pope* v. *Allis*, *supra* ; Benj. Sa. (4th Am. Ed.) § 877 and note. Acceptance : 2 Sch. Per. Pro. (2d. Ed.) § 583 ; Benj. Sa. § 1356, and note. *Cutler* v. *Gilbreth*, 53 Maine, 178 ; 1 Pars. Con. (6th Ed.) p. 591, and note ; *Babcock* v. *Trice*, 68 Am. Dec. 560 ; *Early* v. *Chippewa Log. Co.* 68 Wis. 112 ; *Marshall* v. *Perry*, 67 Maine, 84. Defense relied on, open to defendant. 2 Sch. Per. Pro. § 581 ; *Perley* v. *Balch.* 23 Pick. 283 ; *Fisk* v. *Tank*, 12 Wis. 276 ; *Smith* v. *Mayer*, 3 Cal. 207 ; *Camors* v. *Gomila*, 9 Mo. App. 205.

*A. N. Williams*, for plaintiffs.

Place of rejection or acceptance is Water Cove, Maine. *Brownlee* v. *Bolton*, 44 Mich. 218 ; *Pease* v. *Copp*, 67 Barb. 132 ; *Lincoln* v. *Gallagher*, 79 Maine, 189. Defense relied on by defendant not open to him. *Norton* v. *Dreyfuss*, 106 N. Y. 90 ; *Brown* v. *Foster*, 108 N. Y. 387 ; *Parks* v. *O'Conner*, 70 Tex. 377 ; *Copelay Iron Co.* v. *Pope*, 108 N. Y. 232 ; *Smith* v. *New Albany Rail Mill Co.* 50 Ark. 31 ; *Sprague* v. *Blake*, 20 Wend. 61. Counsel also cited : *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52 ; Chit. Con. 450 ; *Dutton* v. *Gerrish*, 9 Cush. 89 ; *Chanter* v. *Hopkins*, 4 Mees. and Wel. 399 ; *Ottawa &c. Co.* v. *Gunther*, 31 Fed. Rep. 208 ; Benj. Sa. 4th Am. Ed. (Corbin,) § § 985-989.

PETERS, C. J. The controversy in this case grows out of an agreement between plaintiffs and defendant made and delivered in this State, which runs as follows : "This agreement made and entered into this seventh day of January, 1888, by and between Morse & Sawyer, of Bath, Maine, of the first part, and Warner Moore, of Richmond, Va., of the second part, Witnesseth :

"That the said parties of the first part for and in consideration of the sum of one dollar to them in hand paid, the receipt whereof is hereby acknowledged, do hereby sell and agree to deliver at their wharves at Water Cove, (Cape Small Point, opposite Burnt Coat Island, as seen in Coast Chart No. 6, from four to six miles west of Seguin Island light-house,) Maine, after the ice has become twelve inches in thickness, of good quality, during the months of January or February, 1888, two thousand tons of *good, clear, merchantable ice not less than twelve inches in thickness*, to be weighed by a sworn weigher, with all the proper fitting material necessary for the voyage included, at the price or rate of forty cents per ton, of two thousand pounds. Each cargo to be paid for on presentation of sight draft or note for thirty days or sixty days as may suit party of second part for the amount accompanying bill of lading and weigher's certificate of said cargo. Cakes to be twenty-two by thirty inches."

The ice delivered under this contract was shipped to Richmond, Va., where the defendant resides, to be sold in that market to his customers. It was to be paid for according to its weight and quality at the port of shipment in Maine, any deterioration of the article during transit being at the risk of the purchaser.

The first question submitted to the jury was whether the ice had been accepted by the defendant or not, and that was decided in favor of the plaintiffs.

That brought up the question, whether, having accepted the ice, the defendant could rely on a breach of the warranty of the quality of the ice to reduce the claim of the plaintiff, who sues in this action of *indebitatus assumpsit* for the contract price ; the defendant alleging that the ice was not, at the time and place of delivery in Maine, of the quality called for by the contract.

The judge presiding, being of the impression that such a defense might be admissible in case of an executed agreement containing warranty, but not where the agreement is executory, ruled out the defense as a matter of law. It is to be noticed that the ruling was without qualification, admitting of no inquiry into the circumstances in which the ice was accepted. It determines that an acceptance in a case of this kind (in the absence of fraud of course) absolutely terminates the obligation of the vendor. The judge further ruled that "when the defendant took [that is by a hired carrier] the property and carried it away the property passed to him."

Our examination of this question leads us to the conclusion that the position of the defendant was well taken, and that the alleged defense should have been permitted to him.

That there is a warranty or a condition precedent amounting to warranty in the contract, there can be no doubt. Such a warranty will be found to be variously characterized in the books, as executory warranty,—a condition precedent amount-to warranty,—in the nature of warranty,—with the effect of warranty,—equal to warranty, and the like. It is immaterial, for, present purpose, whether it be regarded as an express warranty or an express condition implying warranty, as the effect must be the same. One kind within its limit is not a more potential ingredient in a contract than the other, the difference between them being only in the style of agreement to which they may be annexed. An express warranty may be also special, however. It is now well settled by the authorities generally, our own cases included, that a sale of goods by a particular description of quality imports a warranty that the goods are or shall be of that description ; a warranty which becomes a part of the contract if relied upon at the time by the purchaser. *Bryant* v. *Crosby*, 40 Maine, 9 ; *Randall* v. *Thornton*, 43 Maine, 226 ; *Hillman* v. *Wilson*, 30 Maine, 170 ; *Gould* v. *Stein*, 149 Mass. 570, and cases cited. Here there is a clear description of both the kind and quality of the ice, the quality to be merchantable.

It was conceded at the trial that the position relied on by the defense would be legitimate were it an executed instead of

executory contract that contained the warranty. Why should there be the difference? Certain early New York cases, which will be further considered hereafter, by which the rule given at the trial is more or less supported, give as a reason for the rule, that in an executory contract *any* article of a particular quality may be tendered in the performance of the contract and the vendee must see if the article agrees with the terms of the contract, while in an executed sale the agreement is that a particular article actually delivered possesses the quality stipulated for. This undoubtedly expresses correctly the distinction between the classes of contract, but it does not impress us that there should be such an essential difference in their effect. The reason is not palpable why the vendee in the one case more than in the other should have to see that he receives only merchantable articles when a delivery is made. It seems inconsistent that the warranty, which is a part of either contract, should terminate at delivery in one contract and not in the other. Each vendor makes virtually the same warranty, and the two vendors at the point of delivery would appear to stand upon common ground. The seller in an executory contract agrees to do what the seller in an executed contract has already done. When he tenders the articles that he has agreed to deliver, such articles become particularized and identified, and he then represents that such particular and identified articles possess the quality stipulated for by his executory agreement. The terms of the contract of sale become the terms of the sale. The condition precedent becomes a warranty. Professor Wharton (Whar. Cont. § 564,) expresses the idea in these words: "A substantial, though partial (defective) performance of a condition precedent, followed by acceptance on the other side, transmutes the condition precedent into a representation (implying warranty), not barring a suit on the contract, though leaving ground for a cross-action for damages."

Executory and executed contracts are very much alike in the elements that enter into them. There are executory steps in all executed contracts. A bargain precedes the sale. If there be a warranty, that is usually first a part of the bargain and after-

wards of the sale. So in an executory contract the warranty is part of the agreement of sale, and at delivery a part of the sale. Many contracts commonly spoken of as executed contracts are really wholly or partially executory. All orders for goods whether for present or future delivery are of an executory nature. All sales by sample are such. The author of Smith's Leading Cases (8th ed. 1 Vol. part 1, p. 339), says in discussing this distinction : "Where the vendor agrees to sell goods of a certain kind, without designating or referring to any specific chattel, the contract is essentially executory, whether it purports to be a present transfer, or a mere undertaking to deliver at a future period, and the right of property does not pass until the merchandize is delivered to, or set apart for the purchaser." Every contract is executory on the one side or the other until the party has done what he has agreed to do.

The fact of acceptance, however, as a matter of evidence, may have great weight on the question of satisfactory or sufficient performance. In the first place, it raises considerable presumption that the article delivered actually corresponded with the agreement. In the next place, it is some evidence of a waiver of any defect of quality, even if the article did not so correspond, evidence of more or less force according to the circumstances of the case. If the goods be accepted without objection at the time or within a reasonable time afterwards, the evidence of waiver, unless explained, might be considered conclusive. But if, on the other hand, objection is made at the time, and the vendor notified of the defects, and the defects are material, the inference of waiver would be altogether repelled. But acceptance accompanied by silence is not necessarily a waiver. The law permits explanation and seeks to know the circumstances which induced acceptance. It might be that the buyer was not competent to act upon his own judgment, or had no opportunity to do so, or declined to do so as a matter of expediency, placing his dependence mainly, as he has a right to do, upon the warranty of the seller. Upon this question the facts are generally for the jury under the direction of the court.

The law of waiver more commonly applies to things that are not essential to a substantial execution of the contract; often such as relate to the time, place or manner of performance, or that affect merely the taste or fancy perhaps, and are such departures from literal performance as do not bring loss or injury upon the purchaser. *Baldwin* v. *Farnsworth*, 10 Maine, 414; *Lamb* v. *Barnard*, 16 Maine, 364.

We think the rule invoked by the defendant a just one. Speaking generally, it is the safer rule for both buyer and seller. The opposite rule imposes on either of them very great responsibility and risk. It might be ruinous to a vendee, who is in urgent need of an article, not to accept it, although even much inferior in quality to the description contained in the contract. Certainly, it should not be considered a hardship to á seller to require of him a compliance with his contract, or damages for his non-compliance.

The present case illustrates the justness of the rule, if the facts are proved as the defendant alleges them. The plaintiffs agreed to deliver ice which they warranted should be good, clear and merchantable. Two cargoes were loaded for shipment to a southern port. Defendant furnished the vessels, though they were probably chartered by the plaintiffs on the defendant's account. There is nothing in the charge of the judge, in the exceptions, or on briefs of counsel intimating that the defendant ever saw the ice, either by agent or personally, until it arrived in Virginia, or that he was notified to be present or knew of the delivery at the time of it. It would seem to be a rather stringent construction of the contract that the defendant must watch the loading of the cargoes, upon the penalty, if he failed to do so, of having to pay full price for whatever defective ice might be delivered behind his back, after he had taken for his protection, and paying for it in the consideration of the contract, an agreement of warranty in such positive terms. Still it may be that the plaintiffs could legally refuse to deliver the ice unless the defendant after notice should be present to receive it. The cargoes, after reasonable passages, arrived in a very unmerchantable condition. There was no lack of objection or protest from

the defendant. He wrote repeatedly and telegraphed the plaint-
iffs. expressing his disappointment and asking their advice as to
the disposition of the ice. But no satisfactory answer came.
What should he do? There was no possibility of re-shipment,
nor could the ice be preserved in that climate without the pro-
tection that his own ice-houses would afford for such purpose.
Storage in any ordinary manner could not possibly save the
property. He stored the ice and sold it by enterprising expe-
dients as rapidly as possible. He alleges that it was late spring
ice, of poor texture and in proximately worthless condition when
shipped from Maine. If that can be shown by witnesses and in
court at the home of the plaintiffs, it would seem to be an in-
justice if the defendant is not permitted to make the defense.

Mr. Benjamin, (Sales, 3rd Am. ed. p. 888) in allusion to the
buyer's remedies after receiving possession of the goods, says he
has three remedies against the seller for a breach of the warranty
of quality. *First,* the right to reject the goods if the property
in them has not passed to him. *Second,* a cross-action for
damages for the breach. *Third,* the right to plead the breach
in defense to an action by the vendor, so as to diminish the
price. These remedies are mentioned without any distinction
between kinds of sales. The propositions are general, without
any intimation that the procedure does not apply to warranties in
executory sales. In the text such a distinction is not even noticed.
In the notes to the text, however, it is remarked by the American
editor that there are New York decisions inconsistent with the
rule stated in the text. The first of these remedies, that of
rejecting the goods, seems especially applicable to executory
and inapplicable to executed sales, because it precedes accept-
ance, while in executed sales there has been acceptance and the
title has passed. It is only in executory contracts and con-
tracts that are merely *prima facie* executed that the title has
not passed.

Mr. Benjamin states further that the buyer's remedies are not
dependent on his return of the goods, nor is he bound to give
notice to the vendor, "but," he adds, "a failure to return the
goods, or complain of the quality raises a strong presumption

that the complaint of defective quality, is not well founded."
Prof. Parsons, in the text and notes of his work on Contracts,
lays down the same legal propositions that Mr. Benjamin does,
making not a word of allusion to there being any difference in
the application of them between sales executed and sales ex-
ecutory. He also states that if the buyer accepts goods inferior
to such as are stipulated for, his continued possession without
complaint will be a presumption against him on the question of
damages. Pars. Con. (6th ed.) *591, and notes.

Mr. Smith, in Leading Cases, in notes to the case of *Chandelor*
*v. Lopus,* discusses and fully indorses the same rules, as de-
ducible from the authorities, and he and the editors in the last
American edition of that work cite and compare a great many
of the decided cases on the subject, and they give no recogni-
tion to a distinction between executed and executory contracts
in the application of such remedies. We quote a few passages
from their comments : "When specific property is referred to,
still, if the reference be through the medium of a sample, the
contract will be so far executory, as to fail of effect unless the
bulk of the commodity corresponds with the sample."—"Nor
will his [buyer's] right to indemnity or compensation necessarily
end on his acceptance and use of the goods with full knowledge
of the defect, but he will be entitled to bring suit on the con-
tract, and receive damages for the breach of the implied engage-
ment that the bulk of the commodity should correspond with
the sample exhibited at the time of the sale." In the case at bar
there was an ideal or descriptive sample,—a description equiva-
lent to the exhibition of a sample. There can be no doubt that
if the vendee may bring an action of his own on the contract, he
can as well defend against an action brought upon the contract
by the vendor. "The right of the vendee to rely on the breach
of warranty, or a failure to comply with the terms of an execu-
tory contract, as a defense to an action for the purchase money
may now be regarded as established in England and in most of
the courts in this country."—"The course of decision at the
present day tends towards the position that a partial failure of
consideration may be given in evidence in mitigation of damages,

even when the original contract remains in full force, and the
suit is expressly or impliedly founded upon it." "In the case
of *Withers* v. *Greene*, 9 How. 203, the Supreme Court of the
United States receded from the ground taken in *Thornton* v.
*Wynn*, 12 Wheat. 183, by holding that a partial failure of
consideration growing out of fraud or breach of warranty, may
be set up as a defense to an action brought by the vendor. The
same rule applies to sales under an executory contract, or by
sample, and the buyer may rely on the deficiency of value
resulting from the failure of the property sold to correspond
with the terms of the contract, as a reason why he should not be
compelled to pay the price in full: *Mandel* v. *Steel*, 8 M. &
W. 858; *Babcock* v. *Trice*, 18 Ill. 420; *Dailey* v. *Green*, 15
Penn. St. 118."

We are unable to find in the English cases much support for
any discrimination in the application of the above doctrine
between sales executed and sales executory, although very many
of the modern English cases arise out of sample-sales and
other contracts of an executory nature. The principal support
for it is found in some of the New York cases and in those of a
few other States that have followed the lead of the New York
court in this respect. There are cases which hold to a modifica-
tion of some of these forms of remedy, having no bearing,
however, on the decision of the present case. Some courts have
held, that a rejection or rescission is not allowable if the
goods tendered are of the kind or species contracted for, even
though the quality be inferior. But in this State the doctrine
of rescission in cases of warranty has been fully established.
*Marston* v. *Knight*, 29 Maine, 341. In a few cases there is a
leaning towards the doctrine that an acceptance becomes
a waiver after a long continued acquiescence on the part of the
vendee. (Smith's Lead. Cas. 8th ed. Vol. 1, part 1, pp. 324,
326, 360, 362, *et seq.*)

It is noticeable that in the more modern English cases the court
have preferred to regard executory contracts as based upon a
condition precedent rather than upon warranty. No essential
difference of remedy follows from it, though a different style of

pleading may be apposite. Instead of a breach of warranty and a suit upon warranty, it becomes, on the new idea, a failure to perform a condition precedent and a suit on the contract. In Leading Cases, before cited, the commentator expresses the theory in an alternative way in these words : "The right of a vendee to rely on the breach of a mere warranty, or a failure to comply with the terms of an executory contract, as a defense to an action for the purchase-money may now be regarded as established in England, and in most of the courts in this country." But the editor at the same time says (p. 334) that "such cases have generally proceeded on the ground of an express or implied warranty." See also in Vol. 2, part 1, Smith's Leading Cases, the discussion under case of *Cutter* v. *Powell*, at pp. 18, 20, 22, *et seq.* Mr. Benjamin inclines to the view taken in the English cases, quoting Lord Abinger as deprecating the prevalent habit of treating a condition precedent as a warranty. Other writers incline favorably towards the views of Lord Abinger as expressed by him in the case of *Chanter* v. *Hopkins*, 4 Mees. & Wel. 399, although admitting that the prevailing theory continues the other way.

The length of this opinion reasonably precludes further discussion of points that may be regarded as merely theoretical. Whether in the present case it be a condition or a warranty, and that might be at the election of the defendant to determine as he pleased, we think the defense set up to the action should have been heard upon the ground of a breach of condition, or of warranty, or upon both grounds.

The main question for our decision has not been the subject of much discussion in our own State, although the principle involved has been acted on in a great number of instances, and there have been judicial expressions and rulings affecting it. In *Folsom* v. *Mussey*, 8 Maine, 400, it is allowed that evidence of consideration may be received in actions between the parties to a contract, to reduce the damages. In *Herbert* v. *Ford*, 29 Maine, 546, the doctrine is approved. *Rogers* v. *Humphrey*, 39 Maine, 382, directly applies to the present facts. It is there held that "when a party seeks to recover payment for articles

delivered under a special contract which he has not fully performed, the damages suffered by such breach may legally be deducted in the same suit." The case of *Peabody* v. *Maguire*, 79 Maine, 572, in its effect sustains the same principle. It is there decided that in a conditional sale the mere fact of delivery by the vendor without performance by the vendee, nothing being at the time said about the condition, might afford presumptive evidence of the waiver of the condition, but that the fact may be explained and controlled, and whether it be a waiver of the right of title or not would be a question of fact to be ascertained from the testimony. So in the present case whether acceptance be a waiver of the full performance of the condition precedent or not is likewise a question to be settled upon testimony. The position of parties is reversed in the two cases, but the principle is the same.

The first case in this country, except a Maryland decision to the same effect, and perhaps the leading case in the recognition of the principle that affirmation of quality establishes warranty, is *Hastings* v. *Lovering*, 2 Pick. 214, where oil then in Nantucket was sold to be delivered in Boston in ten days, the vendor describing the same to be "prime winter oil." That was in fact as much of an executory contract as is the one under discussion, although not in form such. The point was taken in the trial that the contract although executory was settled by a bill of parcels given at delivery, the executory agreement having no further effect. But the court overruled the position. The case is effective on the present question as showing that acceptance has no greater effect as an estoppel in executory than in executed sales. Other Massachusetts cases bear, either directly or indirectly upon the question. In none of them is there any judicial utterance indicating that executory and executed sales do not on this question stand alike. *Perley* v. *Balch*, 23 Pick. 283; *Dorr* v. *Fisher*, 1 Cush. 215; *Henshaw* v. *Robins*, 9 Met. 83; *Mixer* v. *Coburn*, 11 Met. 559; *Morse* v. *Brackett*, 98 Mass. 205. Several Connecticut cases that are often cited as supporting the theory that description imports warranty, and that the defendant may recoup damages for a breach of contract if the vendor

brings a suit, were cases of executory contracts or sales. *Mc-Alpin* v. *Lee*, 12 Conn. 129; *Kellogg* v. *Denslow*, 14 Conn. 411. And of the same character is the leading case in the Supreme Court of the United States on the same question. *Lyon* v. *Bertram*, 20 How. 150. In that case the vendor was to deliver a cargo of flour within three weeks, the price to be according to an inspection to be made at delivery. The contract was in form a sale, but in effect a contract for future sale and delivery. The same deduction may be made from the cases of so many of the States that the rule may be fairly characterized as general. And the same result is producible from the English cases.

The New York court held in earlier cases that warranty in an executory contract did not in ordinary circumstances survive delivery and acceptance. But the doctrine grew up from the theory of law, maintained for a great while by that court, that description of quality is not a warranty of quality. In Leading Cases, before cited, it is said, in distinguishing the New York theory from that of Massachusetts and Pennsylvania : "The authorities in New York assume that calling a thing by a particular name, or designating as of a certain quality, is no evidence of a warranty or contract that it should be as described." Certainly a thing cannot survive that does not exist. Wilde, J., in *Marshall* v. *Robins,* 9 Met. 90, declared upon that ground that the authorities in New York were without influence upon the question of effect of acceptance in Massachusetts, saying : "Opposed to these authorities are the cases in New York ; but these were determined on the assumption that there was no warranty express or implied, and they, therefore, have no bearing on the question as to the effect of the inspection of the goods sold by the purchaser."

The last named rule of the New York cases was found to be so much at variance with the authorities elsewhere, that in the case of *White* v. *Miller*, 71 N. Y. 118, all previous cases which held that warranty did not follow from description of quality, were overruled. And, as a natural if not necessary consequence thereof, the tendency of that court seems in later cases to have been progressive towards the adoption of the other rule that

acceptance in cases of executory sales with warranty does not preclude the vendee from afterwards claiming damages against the vendor for a breach of the warranty; if the court has not already arrived at that point. There are late cases, in that State, of express warranties, the doctrine of which seems to completely vindicate the position of the defendant in the present case, even should he be obliged to stand or fall upon the interpretation of the law of his contract according to the New York authorities. In *Brigg* v. *Hilton*, 99 N. Y. 517, and in *Fairbank Canning Co.* v. *Metzger*, 118 N. Y. 260, it is declared that an express undertaking to deliver in the future articles of a certain quality was an express warranty of such quality when the articles were afterwards delivered, a warranty that survived an acceptance of the articles delivered; and that the rule would be the same whether the goods were in existence at the time of contract of sale or were to be manufactured.

Upon the authority of these cases the contract in the case at bar contains an express warranty. An express undertaking to produce a thing is an express warranty of the thing produced.

*Exceptions sustained.*

WALTON, VIRGIN, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.