EGBERT P. WATSON vs. THE BIGELOW COMPANY.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Upon the question as to whether a sixty horse-power boiler is constructed upon a defective plan, evidence that no complaint had been made to the manufacturer as to the working of a number of smaller boilers, the largest of which was of twenty-five horse-power, which had been constructed upon the same plan and sent to various parties, is irrelevant.

The parties were at issue as to whether the defendant's workmanship upon a sixty horse-power boiler was improper, or whether the plan

itself was defective. *Held* that the fact that the defendant had made a deduction from the contract price for a fifteen horse-power boiler which it had previously constructed for the plaintiff upon the same plan, without saying anything about the plan, did not constitute an admission by silence that the plan was a proper one.

The acceptance of a chattel constructed under a contract does not prevent the purchaser from afterwards suing for damages for defects which were known or could have been ascertained upon inspection.

Such acceptance is, however, some evidence of compliance with the contract, or of waiver of defects.

The question whether an article has been accepted as complying with the contract, and whether there has been a waiver, are questions of fact.

Argued April 21st—decided August 12th, 1904.

ACTION to recover damages for breach of contract in the construction of a boiler, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Hubbard, J. ;* verdict and judgment for the plaintiff for $516, and appeal by the defendant. *Error and new trial granted.*

*George D. Watrous* and *Harry G. Day,* for the appellant (defendant).

*E. P. Arvine* and *George E. Beers,* for the appellee (plaintiff).

TORRANCE, C. J.　The complaint alleges, in substance, that the defendant agreed to make a boiler for the plaintiff for an agreed price and according to certain plans and drawings furnished by the plaintiff; that the defendant finished the boiler and delivered it to the plaintiff, who then paid the agreed price ; that said boiler was not made according to said plans and drawings, nor in a workmanlike manner, and that in consequence thereof it was of no value to the plaintiff.

The defenses were, in substance, (1) that the boiler was properly made in accordance with the terms of the contract ; (2) that the plaintiff, after examining and testing said

boiler and having full knowledge of all the alleged defects therein, accepted the same in full performance of said contract.

The evidence for the plaintiff tended to show that the defects which rendered the boiler valueless arose from poor workmanship and a failure to follow the plans and drawing; while that of the defendant in reply tended to show that said defects were due to the fact that the plaintiff's plan of boiler was an unsuitable one for a sixty horse-power boiler like the one here in question. In rebuttal of this the plaintiff offered certain evidence, to which the defendant objected, but the court admitted it, and the rulings made by the court in so doing are assigned for error.

The other errors assigned relate mainly to the charge to the jury.

The rulings upon evidence will be first considered. The plan of boiler here in question was invented by the plaintiff, who is a mechanical engineer and machinist, and boilers made according to that plan are known as Watson water tube boilers. The boiler in question here was a sixty horse-power boiler of this kind. One of the serious faults found by the plaintiff with the boiler here in question was that its tubes leaked badly when subjected to the ordinary working pressure under which it was designed to be used. The defendant claimed that this leakage was due not to the workmanship of the defendant but to the plan of construction of the boiler embodied in the plans and drawings furnished by the plaintiff. In support of this claim the defendant offered evidence tending to show that said plan as embodied in the boiler here in question was a vicious one in this respect, among others, that no allowance was made for the difference in expansion and contraction between the steam generating tubes and the outer circulating tubes; and that as these tubes entered into and were held by the same tube sheets, there was an unequal expansion, which produced the leakage complained of. Prior to the introduction of this evidence, it had appeared in evidence that before the contract here involved was made, the plaintiff had had made for him, by

other manufacturers, some ten or twelve boilers upon the same plan as the one in question here; that of these, one was a twenty-five horse-power boiler, others were ten and fifteen horse-power boilers, and two were less than ten horse-power; and that the one here in question was the only sixty horse-power boiler which had been made upon said plan. As bearing upon the question whether said plan was an unsuitable one for a sixty horse-power boiler, as claimed by the defendant, the plaintiff, in rebuttal, proposed to offer evidence regarding each of said boilers made for him by others, showing the place to which it had been sent, the use to which it had been put, and the fact that he had heard no complaints about any of said boilers. The defendant objected to this line of evidence, and the court allowed an exception to all of it, without requiring the defendant to state specifically the grounds of his objection to each item of it. The court admitted the evidence, and the plaintiff testified at length concerning the facts above mentioned in reference to each of said boilers.

We think the court erred in admitting this evidence. The testimony objected to introduced into the case evidence as to many collateral matters, which tended to complicate the case, and which the defendant could have been but ill prepared to meet with counter evidence. The defendant was prepared to show that the plaintiff's plan of boiler was an unsuitable one for a sixty horse-power boiler; but by the rebuttal evidence it was, in effect, called upon to show that the plan was an unsuitable one for ten or twelve much smaller boilers. Then, again, if we assume that the rebuttal evidence had any probative force, that force was very slight. In it the fact that no complaint was made to the plaintiff about the small boilers is made the basis of an inference that they all worked well; and this in turn is made the basis of an inference that a plan suitable for small boilers was a suitable plan for a boiler more than twice as large. The fact that this evidence if of any, is of but slight, probative force, and that it complicated the trial of the case by the introduction of many wholly collateral issues, would have justified

its exclusion. But waiving the question whether the evidence should have been excluded upon these grounds, we think it was irrelevant and should have been excluded on that ground. The question between the parties was whether the plaintiff's plan of boiler was a suitable one for a sixty horse-power boiler, a boiler more than double the size of any of its kind theretofore made. The defendant had offered evidence tending to show that said plan was not a suitable one for such a boiler; the plaintiff was permitted to meet this by evidence remotely tending to show that it was a suitable plan for very much smaller boilers. If we assume that the plan was a suitable one for these smaller boilers, that fact, standing alone, as it did in this case, afforded no legitimate basis for an inference that it was a suitable one for a sixty horse-power boiler. The difference in size between the boilers tested by actual use and the one here in question might well affect the conditions of the test, and there is no evidence in the case to show that it did not. Under these circumstances we think the court erred in not excluding the evidence.

The defendant complains, also, of another ruling upon evidence. It had appeared in evidence that the defendant, about the time the boiler in question here was made, had made for the plaintiff a fifteen horse-power boiler, after the plaintiff's plan. In rebuttal, against the defendant's objection, the plaintiff was permitted to show that said boiler had been improperly made, that the defendant had made a deduction from the price of said boiler on account of said workmanship, and that defendant did not say anything about the plaintiff's plan or boiler, or claim that the defect was due to said plan. This silence of the defendant was offered and received as an admission, by conduct, on the part of the defendant, that the plaintiff's plan of boiler was a suitable one.

We think the court erred in admitting this evidence for any such purpose. The plaintiff's claim was that the defect for which he claimed a deduction was due to the defendant's fault; the defendant says nothing but allows the deduc-

tion.  Under such circumstances the fact that the defendant said nothing about the plan of boiler, good or bad, affords no legitimate ground for an inference that it either approved or disapproved of said plan.

On account of the foregoing erroneous rulings upon evidence we think a new trial should be granted; and this being so, it will be unnecessary to consider any of the other claims of error save one.  That one relates to the effect of the plaintiff's acceptance of the boiler upon his right thereafter to recover damages for defects in it which were or ought to have been known to him when he accepted it. The complaint alleges that the defendant agreed to make and deliver to the plaintiff a boiler of a described kind according to certain plans and drawings ; and the only breach alleged is the failure of the defendant to make such a boiler. The evidence for the defendant tended to show that the plaintiff, after his own examination and test of the boiler, and with knowledge that it was not made in accordance with the plans and drawings, had accepted and retained the boiler as his property.  In the trial court the defendant claimed that as matter of law and irrespective of the question of waiver, such acceptance put an end to the plaintiff's right to recover damages for the defendant's failure to make the boiler according to the terms of the contract; and the defendant asked the trial court to charge the jury to this effect.  The trial court did not so charge.  On the contrary the court told the jury, in substance, that unless they found as a fact that the plaintiff, by his conduct in accepting the boiler had waived his right to recover damages, his right to do so would not be lost merely by accepting and retaining the boiler as his property, with knowledge that it was not made according to the terms of the contract.

Whether in cases like the present, where a thing is to be made according to the terms of a contract, an acceptance of that thing with full knowledge that it is not so made, puts an end to the acceptor's right to recover damages, is a question upon which the decisions in our courts of last resort are in direct conflict.  Some courts hold that when the thing

to be made is finally offered in delivery in performance of the contract, it becomes the duty of the deliveree to examine it, and if it does not conform to the contract, to reject it within a reasonable time. Failing to do this, he is held, as matter of law, in the absence of fraud or mistake, to have lost his right to recover damages for any defects of which he had, or with reasonable diligence might have had, knowledge. According to this view, the acceptance of the article by the acceptor as his property, deprives him of any right to complain of defects in it known to him, or which might have been discovered upon a reasonable inspection.

Other courts hold just the opposite of this. According to them the buyer may accept an article made for him under a contract, although it does not conform to the contract, thus making it his property and precluding him from afterwards rejecting it, and still retain his right to damages for noncompliance with the contract. According to this view the seller's engagement to furnish the thing called for by the contract, survives the acceptance, and is available to the buyer even after a transfer of title to him. These two views of the law upon this subject are clearly stated in 2 Mechem on Sales, §§ 1392 and 1393, and in Burdick on Sales, §§ 220–224; and many cases in support of each view are cited in the notes to those sections by each of these authors.

As the court is of opinion that the second of the views above expressed is the one supported by reason and by the weight of authority, we think the trial court did not err in adopting, as it appears to have done, that view of the law. In cases like the present, however, it must be borne in mind that the fact of acceptance may, as matter of evidence, tend to show, with more or less force, according to circumstances, that the article complied with the contract, or that the acceptor had waived his right to recover damages for such noncompliance. The effect of the fact of acceptance, as matter of evidence in such cases, is clearly and forcibly stated in *Morse* v. *Moore*, 83 Me. 473, 481. Ordinarily, the question whether the article was accepted as a full performance of the contract, and the question of waiver, are

questions to be determined by the jury under the instructions of the court.

For the reasons hereinbefore given there is error and a new trial is granted.

In this opinion the other judges concurred.