Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff made a contract to install certain electrical machinery- for the United. States for. the sum of. $43,500. *289 The work involved the changing of direct-current motors to alternating-current motors, the defendants then having in use three 415-horsepower direct-current motors and two 125-horsepower direct-current motors known as Bullock motors, which were to be replaced by others. When advertisements were made for bids the proposed bidders were given the option of bidding upon the entire work for a stated sum or of bidding upon the work for a stated sum and the direct-current motors. The plaintiff’s bid, which was accepted, was to do the work called for by the specification for the sum of $43,500 in money and the direct-current motors when they had been replaced. A written contract was then made, a copy of which is in the findings, and it makes no reference to the said Bullock motors. By the terms of the contract the plaintiff undertook to do the work called for by the specification for the agreed sum of $43,500. The contract was dated May 10, 1904, and the work was to be done within seven months. Before the expiration of that time the plaintiff, by direction of the Navy Department, suspended the work, and on May 29, 1905, a supplemental contract was made between the parties, calling for changes in the original plans and specifications,' at an increased compensation to the plaintiff of $2,054. Later, on the 17th day of January, 1907, another supplemental contract was made, relative to the same matter. Thereby the plaintiff was to do certain other work in connection with its original contract for an additional sum of $404; and later still, on or about the 2d day of March, 1909, the plaintiff proposed to install certain other work and to make a deduction of $1,000 from the contract price, and this proposition was accepted. The work, therefore, was not completed until the 15th day of June, 1910.
In neither the original contract nor in any of the supplemental contracts is there any reference whatever to the direct-current or Bullock motors or their disposition. These Bullock motors were delivered to the plaintiff as and when they were replaced by the alternating-current motors called for by the contract and the supplemental contracts, and they remained in use by the defendants until they were replaced. *290 After the work was finished and accepted the defendants paid to the plaintiff, on or about the 31st day of August, 1910, the balance due upon the contract price of $43,500, and the plaintiff executed a final receipt for said price, the plaintiff prior thereto having received the Bullock motors. A short time after receiving this money the plaintiff presented a claim to the department, asserting that the direct-current motors, which it had received as above stated, had been estimated by it, at the time of making its bid, to be worth the sum of $7,475; that it sold the direct-current motors for $3,691.57, and had thereby suffered a loss of the difference, $3,783.43, for which suit is brought, and that this loss was occasioned by the fact that the delay in delivering the Bullock motors and their use by the defendants during the period from the making to the completion of the contract had caused them to deteriorate in value. The plaintiff, therefore, claimed the difference between those sums as damages on account of said delay and use, or, in the alternative, that it should be paid the rental value of said Bullock motors during said period of delay.
It is manifest that, taking the written contract as a basis, there is no cause of action for its breach, because it makes no reference to what was to be done by either party with reference to the direct-current motors. Both parties, however, imderstood that, in addition to the said sum of $43,500, the plaintiff was to receive the direct-current or Bullock motors when they had been replaced, as above stated, by the alternating-current motors. We shall, therefore, consider the case as if the written contract had expressed the said understanding. The contract provided, as we shall assume, .that the plaintiff undertook to do said work and was to be compensated therefore by the payment of said sum of $43,500, as extended or limited by the supplemental contracts mentioned, and, in addition, was to receive the Bullock motors as and when they were replaced by the alternating-current motors.
If the original contract had remained unaltered it provided for a completion of the work within seven months; and if it had then been completed the plaintiff would have been entitled to the old motors. The plaintiff’s contention *291 that it was entitled to the Bullock motors at the end of said seven months would lead to the conclusion that its claim is barred by the statute of limitations. It is manifest, however, that the extension of the contract by the supplemental agreements carried the time for completion beyond the original period of seven months. In none of the supplemental agreements was there any provision relative to the Bullock motors or their condition or when they would be delivered to the plaintiff, other than the general agreement that they would be delivered as and when they were replaced by the alternating-current motors. It was the intention of the parties that the Bullock motors would remain in actual use by the Government until they were replaced by the others intended to perform the work being done by the direct-current motors. The contract, therefore, remained executory, and the completion of the work by plaintiff or the replacing of the Bullock motors by alternating-current motors was a condition precedent to the vesting of property or title in the plaintiff. Hatch v. Oil Company, 100 U. S., 124, 132; Jones' case, 96 U. S., 24, 27. The plaintiff could not maintain an • action for the old motors until they had been replaced, nor was it entitled to any rental value of them, because the Government was using its own motors and they remained its property until, by the terms of the contract, the plaintiff could demand their delivery. Harkness v. Russell, 118 U. S., 663, 668. This disposes of the plaintiff’s proposition that it was entitled to any rental value of the old motors during the period of their use by the Government. The plaintiff, however, claims that the Government delayed the completion of the contract, and the motors which it had estimated, at the time of making its bid to be worth .$7,476, had in the meantime, on account of their use, depreciated in value and that, consequently, the motors were of much less value than they would have been if delivered at an earlier period. The defendants made no warranty of the condition or utility of the Bullock motors at the time they would be deliverable under the contract, and no such warranty can be implied. Seitz v. Brewers Mach. Co., 141 U. S., 610, 517; Bond v. Clark. 35 Vt. 577.
*292 It does not appear that tbe price which the plaintiff estimated for the old motors entered into the consideration of the contract, that providing for the payment of $43,500 and the old motors. These were delivered strictly in accordance with the terms of the contract, and they were damaged by their continued use. They were, however, received by the plaintiff and sold. It can not be stated, as a general rule, that the mere receipt of property in a defective condition deprives the buyer of any right of action for damages on account of the property not being of the quality or description contemplated by the contract, but its receipt and the exercise of acts of ownership by the purchaser frequently raise the presumption that he waives the defects as well as to any right of action based thereon.
In Winchester Co. v. Funge, 109 U. S., 651, it appeared that the contract provided for the delivery of 25 wagons in good condition and merchantable order, and that, if they were so delivered in good condition, they were to be sold and the proceeds applied to the payment of a debt. Twenty-one of the wagons were delivered, but none of them was in good condition and merchantable order. The creditor sold 19 of them, and being unable to sell the other 2 credited the net proceeds of sale and sued the debtor to recover the balance of the debt, and it was held that the receipt of the 21 wagons and the selling of them was an acceptance of them fro tanto in payment of the claim, and that the contract for the payment in wagons was unfulfilled as to the 4 wagons not delivered. The price for which the 19 wagons were sold and the selling value of the 2 not sold were held not to have any bearing on the case. The principle of that case is applicable here. The defendants delivered the motors, according to the terms of the contract, and if they were not in as good condition as plaintiff contemplated they would be, the contract being silent upon that point, we can not import a term into it. It should have provided in the contract for a warranty or some stipulation as to the condition in which the motors would be when delivered.
The plaintiff not only received and disposed of the Bullock motors, but when the work was finally completed it executed *293 a receipt for the balance of the consideration mentioned in the contract. Nothing was said at or before that time about any claim on account of the old motors.
Under the circumstances of this case the plaintiff must be held to have waived any right to compensation for any inferior quality or condition of the motors delivered. Copley Iron Co. v. Pope, 108 N. Y., 232; Brown v. Foster, 108 N. Y., 387; Watson v. Bigelow, 77 Conn., 124.
Our conclusion may, in addition, be put upon the broad ground that the defendants complied with their contract when they delivered the Bullock motors as they were replaced. The petition will therefore be dismissed, and it is so ordered.
All concur.