Argued November 20, 1929; affirmed February 11, 1930

# THIERING *v.* GAGE ET AL.

(284 P. 832)

*Wm. T. Stoll* of Marshfield (J. W. McInturff of Marshfield on the brief) for appellant.

*Claud H. Giles* of Marshfield for respondent.

* * *

McBRIDE, J. The plaintiff's evidence in this case tended to show, and this fact is not disputed by any other testimony, that previous to the date of the at-

tachment the Coos Bay Motor Company was indebted to plaintiff in the sum of $6,600, being partly represented by notes and the balance being a debt for money loaned the company not represented by notes; that sometime before the attachment the motor car company became very straitened in its circumstances and, when plaintiff demanded payment of some part of his debt, said company being unable to pay, agreed by its manager, to turn over to him as part payment of his debt the two automobiles mentioned in the complaint, and that plaintiff agreed to accept them at the price of $2,500 and credited them upon his debt for that amount. The cars were then on the floor of the garage of the motor car company and, as testified by Mr. McKenzie, the manager of the garage, they were cars which had been traded or turned in by R. C. Lane and F. M. McClung of Marshfield, the object of turning them over being in part payment on other cars purchased. There was also turned over with the cars the certificates of title, which had endorsed on the back of them, respectively, the names of Lane and McClung, but there is no evidence as to the actual act of affixing their signatures.

◼ When the agreement was made between plaintiff and the manager of the Coos Bay Motor Company, that the company should turn over to him and he should accept the two cars in satisfaction of what the company owed him, to the extent of $2,500, these certificates of title were delivered to him. At that time McKenzie was paying the rent for the garage and was doing some business in the matter of selling cars upon his own account, the motor car company being practically about out of business, at least a moribund concern, and plaintiff told McKenzie to keep the cars on the floor and sell them on his account and took the certificates of

title with him and hypothecated them to a bank for $1,500 which he borrowed upon his personal note and which he subsequently repaid at which time the certificates were returned to him. The motor car company also owed one, Marie Hames, $1,984.30, and, as shown in the statement, an action was commenced and the sheriff, through his deputy, attached the cars in the garage as the property of the motor car company, put tags to that effect on all the cars, including the two in controversy, and put a keeper in charge. Plaintiff's testimony tended to show that at the time the attachment was levied the sheriff was notified by McKenzie that these cars were the property of plaintiff and not of the motor car company, although this statement was contradicted by the officer who made the levy. The keeper, whom the sheriff placed in charge, stayed a day or two and then abandoned his charge and went away leaving the property without a keeper, and the plaintiff, who had been absent, when informed of this fact, took the cars away from the motor car company's garage and stored them in another garage where they remained for a few days until the sheriff again took possession of them removing some portion of the running gear so that they could not be removed from the garage where plaintiff had stored them. Subsequently a judgment was taken in the circuit court in the case of Mrs. Hames against the Coos Bay Motor Company, and an order of sale made in which order the sheriff sold the cars to Mrs. Hames, the judgment creditor, for the sum of $550. Before the sale, the sheriff had been notified orally that these cars were the property of plaintiff. On behalf of the defendant, there was testimony contradicting many of the statements made by the witnesses for the plaintiff; but if there was any evidence sufficient to go to the court as to the material

issues raised by plaintiff's complaint, we can not disturb its findings any more than we could the findings or verdict of a jury.

This is in many respects a unique case. As the trial judge remarked, and our experience bears him out, "that he never had tried a case involving the ownership of a motor car in which the parties had not made a mess of it in the course of their transaction." This is due very much to the fact that the motor statute in many respects is indefinite and its provisions very much involved. Section 3, chapter 364 of the General Laws of Oregon for 1927, amends section 9, chapter 371 of the General Laws for 1921, so as to provide first, as to transfers by dealers in motor cars, the provisions of which are not important here, and then provides that in case of a sale or other transfer of the ownership of a motor vehicle, for which a certificate of title has been issued, the owner of such vehicle shall sign the receipt of registration on the back and endorse therein the name and postoffice address of the transferee and the date of the transfer, and deliver the same to the transferee and the purchaser shall sign this certificate in the space provided thereon and the transferee and holder of said certificate of title shall within 10 days thereafter present said receipt of registration and said certificate of title as assigned and signed to the secretary of state accompanied by a fee of $1 whereupon a new receipt of registration shall be issued and delivered to the assignee and a new certificate of title shall be issued to the assignee. Then follows this exception:

"* * * provided, that if such purchaser is a licensed dealer, the transferor shall merely sign his name to said receipt of registration and endorse said certificate of title, and said licensed dealer shall not

be required to present such receipt of registration and certificate of title to the secretary of state as herein provided, until such time as said motor vehicle or motorcycle has been sold by said licensed dealer; provided that said licensed dealer shall immediately notify the secretary of state that said motor vehicle has been transferred to him.''

It will thus be seen that so far there is no obligation on the part of the licensed dealer to present his certificate of registration or take out a new license. Then follows a further provision, which is as follows:

''Upon the sale of said motor vehicle by said licensed dealer, said licensed dealer shall indorse upon said receipt of registration, a conveyance in such form as the secretary of state may prescribe, containing the name and postoffice address of the transferee, and the date of the transfer, and deliver the same to the transferee, to which shall be attached the assigned certificate of title received by such dealer, which receipt of registration and certificate of title shall be forwarded to the secretary of state, as hereinbefore provided, together with the fee of $1, whereupon the secretary of state shall issue a new receipt of registration and deliver the same to said purchaser, and shall issue a new certificate of title in the name of said purchaser and deliver the same to the legal owner or mortgagee, if there is a legal owner or mortgagee, otherwise to the purchaser.''

There is a further provision making the record of registration and license as the same appears in the records and files of the secretary of state prima facie evidence of ownership or right of possession. For failure to comply with the provisions of subdivision 9 of section 3, chapter 364, Laws 1927, the substance of which has just been given, within 10 days after the date of transfer the person charged with forwarding the receipt of registration and certificate of title is made liable to a fine of not more than $50.

■ It is claimed by the defendant that such a failure rendered the sale void and that, therefore, plaintiff never acquired title to the automobiles in question, even conceding that he paid for them releasing a portion of his debt as claimed by him; but, in view of previous allegations, we do not think that this necessarily or even logically follows. As shown in *Swank v. Moisan,* 85 Or. 662 (166 P. 962), a sale, if otherwise sufficient, was not invalid during the 10 days which were required by the statute in force at the period when that case was tried and now. We expressly held that such a sale was good at the time, but practically, that the purchaser nullified his title and lost it, if within 10 days he neglected to forward his certificate of title and receipt of registration to the secretary of state. In fact, § 4780, Or. L., provided that such default would render the sale invalid, but by subsequent legislation, this provision was repealed and by process of the legislative evolution, instead of the sale being declared invalid, a penalty of $50 was imposed for neglect in these particulars. We think by the repeal of § 4780, Or. L., and the substitution of a penalty of not to exceed $50 for such neglect evinced a clear intent on the part of the legislature not to inflict the penalty of forfeiture of the contract, and while the party may be punished for his neglect by a reasonable fine the contract is still a valid contract, and the legislature intended so to leave it.

The purpose of all these provisions, among other objects, is to afford the purchaser clear evidence of his title, as the law provides that the certificate of title and registration receipt shall be prima facie evidence of ownership thereby implying that there may be other evidence either way to show title to an automobile. So we are of the opinion that, if a man buys his neighbor's

automobile and pays for it in good faith, under the present statute it is his property, even though he may be subject to a fine for not forwarding proper evidence of his title to the secretary of state. He may be fineable for operating the machine under those circumstances, and there is a probability that he would be, and he may be fineable for failing to forward the evidence of his title to the proper authorities, but he does not lose his ownership in the property and his title is good against the world, except such persons, creditors or innocent purchasers who have been misled by the record or by failure to make the proper changes in the record.

There is testimony in this case that the sheriff was notified, when he attempted to levy on the cars, that they were the property of this plaintiff, and, while this is contradicted by evidence of the defendant, we have no right to find differently on that subject in face of findings of the circuit court; nor indeed, would we be disposed to do so in face of the fact that the learned circuit judge had the witnesses before him and was better able to judge their credibility than we could possibly be.

This is not a case in which an attempt to defraud creditors is raised by the pleadings. It is purely a question of law as to whether what took place between the motor car company and the plaintiff was sufficient to vest the title in him and we think that it was. There is no evidence that the sale was colorable or with intent to defraud the attachment creditor of her debt and such a defense can not be interposed unless the same is pleaded in the answer. *Gray v. Earl,* 13 Iowa 188; *Tucker v. Parks,* 7 Col. 62 (1 P. 427) ; *Capure v. Builders' Ins. Co.,* 39 Cal. 123.

■ Much stress is laid upon the fact that there was no visible change of possession. The purchase of the property and thereafter leaving it in the possession of the seller, while it may be a badge of fraud, does not in itself render the transfer void, unless such fact tends to mislead a creditor. Where the creditor is informed as to the transfer, the lack of change of possession will be treated only as an item of evidence, and it is not pleaded here that this transfer was fraudulent, but the claim was that it never took place. We are satisfied, and the court was no doubt satisfied, that it did take place; that there was a bona fide intent to pay off a portion of the motor car company's debt by turning over these cars to the plaintiff or creditor, and, while there was no actual physical taking possession of the cars, which, under the circumstances, would have been very inconvenient, the delivery to him of the certificates of title would amount to a symbolic delivery of the cars and the testimony indicates that it was his intention to place the power of sale in McKenzie who was engaged in selling the cars as a side issue on his account and not to leave them with the corporation.

■ Some complaint is made in regard to the findings, or rather to the first refusal of the court to make some requested findings favorable to defendant but which he evidently did not himself feel justified by the evidence in making. If the evidence did not satisfy him that the ultimate facts were as shown by the findings requested, he had right to refuse to make them and to make his own findings in accordance with the testimony as he saw it without reciting the testimony as a finding. There was just one question to be tried, and that is: Who was the owner of these cars, and that is not a question of law, but a question of fact,

and a fact which the law of replevin requires to be pleaded as such. In cases of this character, the finding of ownership was not a conclusion of law, but an ultimate fact to be determined from the testimony. The court might in its discretion, in addition to finding ultimate facts, have found the collateral facts, but was not compelled to do so. The issue here was the ownership of these cars, a pure question of fact required by law to be pleaded as such, and not a conclusion of law which is never admissible in good pleading.

We think that there is sufficient evidence to sustain the findings and that the findings were sufficient to justify a judgment, and the judgment will therefore be affirmed.

Coshow, C. J., Rand and Rossman, JJ., concur.