Argued November 6, 1935; affirmed January 21, 1936

# HENRY *v.* CONDIT ET AL.

(53 P. (2d) 722)

*George P. Winslow*, of Tillamook, for appellant.

*John F. Reilly,* of Portland (Wilson & Reilly, of Portland, and C. W. Barrick, of Tillamook, on the brief), for respondent E. M. Condit.

ROSSMAN, J. The defendant E. M. Condit, to whom we shall hereafter refer as the defendant, is an automobile dealer in Tillamook. He had an agreement with his co-defendant, George Winters, whereby the latter sold cars upon a commission basis. About two weeks before June 3, 1934, one Ed Krugen agreed to purchase from Winters a second-hand car at a price of $250, making at the time an initial payment of $5 upon the purchase price. Shortly thereafter he lost his employment, and the purchase transaction was terminated by an agreement of Winters to supply Krugen with a small quantity of gasoline. June 3, 1934, Krugen, who was a logger, again came to Tillamook. Arriving at about 8 in the evening he asked Winters for the use of his car, which was granted. Thereupon Krugen called upon a young lady and invited her to accompany him to a dance at Beaver, a few miles outside of Tillamook. With her in the car he drove to the Seashell Restaurant where Winters, two men and the plaintiff were loitering. Krugen then told Winters that he wished to go to the dance at

Beaver, whereupon Winters announced that his friends would also like to go there. Thereupon the group got in the car and, with Winters driving, the trip was made to the dance hall. After the dance Winters, with the same group in his car, started for Tillamook. While the car was traveling at a high rate of speed it failed to slow up sufficiently for a sharp turn in the highway, with the result that it left the roadway and the plaintiff was injured.

No one in the car, with the exception of Krugen, had evidenced to Winters any interest in the purchase of an automobile.

The principal issue at the trial was whether Winters was the agent of the defendant and was acting within the scope of his authority at the time of the accident. To substantiate her contentions, the plaintiff depended principally upon the following facts: (1) that some time prior to the accident Condit had purchased the car involved in the accident from its manufacturer; (2) that defendant's dealer's license plates were upon the car at the time of the accident; (3) that defendant had not filed with the secretary of state a report of the sale of the car before the accident; (4) that on September 24, 1934, Condit signed an instrument transferring title to the car to Elbert Grunder, who had purchased it; and (5) an admission in the original answer of the following averment of the complaint: "The defendant George Winters during all the times herein mentioned was and still is an agent, employee and salesman of said defendant E. M. Condit, and as such agent, employee and salesman, it was the duty of the said George Winters to demonstrate automobiles for prospective purchasers."

Defendant, in support of his contention that he was not the owner of this car, that Winters was not his

employee, and that at the time of the accident Winters was not performing any service for him, offered evidence showing (1) that he required his salesmen to own the demonstrators which they used; (2) that on April 18, 1934, he sold this car to Winters; (3) that at the time of the aforementioned accident the car was owned by Winters; (4) that subsequently, at his own expense, Winters repaired the car; and (5) that after the accident Winters sold the car to Grunder. Condit produced documents and bookkeeping records in support of his testimony that the car had been sold to Winters. Both Condit and Winters testified that the instrument transferring title to Grunder was signed by Condit because in the sale from Condit to Winters the parties had not complied with § 55-203, Oregon Code 1930, which provides:

"Upon the transfer, by a dealer, of a motor vehicle, trailer or semitrailer, whether by sale or otherwise, if such vehicle is not registered and licensed as in this act provided, such dealer shall forthwith file with the secretary of state, upon a blank to be furnished by the secretary of state, a notice, statement or report containing the date of such transfer, a description of such vehicle, the name and the postoffice address of the purchaser, lessee or other transferee, together with such other information respecting such vehicle as may be required by the secretary of state. Upon such sale or transfer by the dealer, such dealer's distinguishing number plates shall be immediately removed from such motor vehicles."

■ The first assignment of error challenges a ruling of the circuit court sustaining the defendant's objection to a question which inquired of Winters whether the defendant had ever purchased this car from him. It will be recalled that defendant claimed that he had sold the car to Winters April 18, 1934, yet admitted that

on September 24, 1934, he signed an instrument transferring title to the aforementioned Elbert Grunder. Before defendant's objection was voiced, the witness had replied "No". Upon defendant's motion, the answer was stricken. This incident occurred while the defendant was offering his proof. While the plaintiff was presenting her evidence she called Winters as a witness and he, in response to one of her questions, replied that at the time of the accident the car carried defendant's dealer's license plates. Upon cross-examination, Winters swore that Condit purchased the car from the manufacturer in April or May, 1934; that defendant immediately placed upon it his dealer's license plates; that he (Winters) purchased it from the defendant April 18, 1934, under a conditional sales contract which he produced; that at the time of the accident he (Winters) still owned the car; and that during all of this time the aforementioned dealer's license plates remained upon the car. The conditional sales contract which he identified, and which was received in evidence, stipulated for a price of $908.55, payable in installments. After the plaintiff had rested, Winters was called as a witness for the defendant and testified that he had been engaged in selling automobiles for Condit for four years upon a commission basis. He swore that he had no regular working hours, no prescribed territory, that he kept this car in his garage, maintained it in repair at his own expense, and had exclusive control over its resale. Upon cross-examination he was asked the question with which we are now concerned, namely, "Did Condit ever buy it back from you?" In our belief, no error was committed when defendant's objection to this question was sustained. Defendant, far from contending that he had purchased the car back from Winters, stoutly maintained that

ever since April 18th Winters was the owner of the car. Moreover, even if it should have developed that the defendant had purchased the car from Winters after the accident, that circumstance would have thrown no light favorable to the plaintiff upon the issue of ownership at the time of the accident. These two circumstances indicate that the question sought information upon an immaterial subject. Finally, it will be observed that the witness answered the question in the negative, the answer being in harmony with defendant's oft-repeated contentions that ever since April 18, 1934, Winters owned the car. This assignment of error reveals no merit.

■ The second assignment of error is predicated upon a ruling which permitted the defendant to ask Winters on cross-examination: "Who owned the car?" It will be recalled that upon direct examination the plaintiff proved by Winters that the defendant's dealer license plates were upon the car at the time of the accident. Manifestly, this proof was presented as the basis for an inference that the defendant owned the car. Such being true, we believe that the above question was within the scope of the direct examination.

■ The third assignment of error is predicated upon a ruling which sustained the defendant's objection to a question which inquired of Winters whether he, on June 14, "made a report to the sheriff of this county of this accident in which you stated that the Condit Chevrolet Company was the owner of this car at the time of the accident?" Nineteen thirty-three Session Laws, chapter 285, page 440 (§ 55-2102, 1935 Oregon Code Supplement), referring to accident reports exacted of those involved in automobile accidents, provides:

"* * * The fact that such reports have been made shall be admissible in evidence solely to prove compli-

ance with this section, but no such report of any part thereof or statement contained therein shall be admissible in evidence for any purpose in any trial, civil or criminal, arising out of such accident.''

No error was committed in sustaining this objection.

The fifth assignment of error is based upon the refusal of the circuit court to instruct the jury that the presence of defendant's license plates upon the car involved in this accident demanded a finding that defendant owned the car. In a previous paragraph we quoted from § 55-203, Oregon Code 1930. The portion quoted is the only statutory provision applicable to the issue presented by this assignment of error. In support of her contention, plaintiff cites *Peters v. Casualty Company of America*, 101 Wash. 208 (172 P. 220); *Davis v. Slocomb*, 288 Fed. 352; *McDonald v. Dundon*, 242 Mass. 229 (136 N. E. 264, 26 A. L. R. 1243); and 42 C. J. 659. In *Peters v. Casualty Company of America*, supra, the facts were that after license plates had been issued to one Schwartz, and he had placed them upon his car, he enterel into a contract of sale with another who operated the car under Schwartz's license plates. While the car was being thus operated it ran into and injured the plaintiff. Schwartz disclaimed liability. A Washington statute provided:

''Upon the sale of any motor vehicle the delivery thereof shall not be deemed to have been made until the vendor shall have removed his license plates therefrom.''

The court held that this statute created a conclusive presumption of ownership in Schwartz.

In *Davis v. Slocomb*, supra, the facts were that the decedent at the time of his death was riding in an automobile driven by his son in the state of Washington.

The license plates displayed on the car had been issued by the Washington authorities to the decedent and the registration in his name had never been changed. The defendant alleged that the driver was negligent and sought to impute his negligence to the deceased. Since the license had been issued to the deceased, defendant claimed that the Washington statute above quoted created a conclusive presumption that the licensee owned the car. In sustaining the judgment of the circuit court in favor of the administratrix of deceased's estate, the circuit court of appeals declared:

"The state statute so cited is in the nature of a police regulation for the protection of the general public to enable one who is injured by the negligent driving of an automobile to localize responsibility. * * * The case at bar is not within the evil intended to be remedied by the statute."

In *McDonald v. Dundon*, supra, the facts were that one Dundon owned an unregistered automobile which he was repairing in the garage of one Rawson who possessed dealer's license plates. Desiring to drive his car for a short distance in the course of its repair, Dundon borrowed from Rawson a set of his license plates, attached them to the car and then undertook to make the trip. An accident occurred which injured the plaintiff while Dundon was driving the car. In holding that these facts revealed liability against Rawson, the court said:

"The jury could have found that Rawson's act contributed to the creation of a nuisance in violation of the rights of travellers upon the highway, that if injury was caused to any person lawfully travelling upon the way by reason of the operation of the automobile that those who were responsible for its presence there would be held liable, that he intentionally assisted and participated in the creation of the nuisance and is

liable for any injurious consequences resulting therefrom.''

The portion of 42 C. J., 659, to which the plaintiff has called our attention states:

''The registration and numbering of motor vehicles is necessary to secure a proper observance of their duties on the highway and for the purpose of aiding in the detection of such vehicles and of those responsible for their movements and conduct, in case they fail to observe such duties, and the object of the license is to furnish a further guaranty that proper use of the vehicle will be made and that it will be operated in compliance with the law.''

*Davis v. Slocomb,* supra, contains nothing in support of plaintiff's contention. The fact that that decision declined to abide by the construction placed upon the Washington statute in *Peters v. Casualty Company,* supra, greatly lessens the authority of the decision last mentioned. The only other decision citing *Peters v. Casualty Company* is *Mitchell v. Churches,* 119 Wash. 547 (206 P. 6, 36 A. L. R. 1132). However, that decision was not concerned with any automobile licensing act. *Peters v. Casualty Company* was decided in 1918. Shortly following the anouncement of that decision the Washington legislature repealed the act construed in that decision. See 1920-1921 Laws of Washington ch. 96, § 13, and 1925 Laws of Washington, ch. 5 (extraordinary session). Moreover, it will be observed that our statute is not susceptible to the construction placed upon the Washington statute in *Peters v. Casualty Company.* It will be observed that in *McDonald v. Dundon,* supra, the Massachusetts court did not hold that the presence of the dealer's license plates upon the car demanded a finding that he was the owner. It held that his act in permitting the unregistered owner to

use his license plates warranted a finding that he contributed to or participated in the creation of a nuisance. We need not here review the earlier Massachusetts decisions which, influenced by the peculiar wording of the Massachusetts automobile licensing acts and the development of Massachusetts jurisprudence under Lord's Day acts, have persuaded the Massachusetts court to hold that an automobile operating without proper license is a trespasser upon the public highways. It is our belief that plaintiff's citations do not support her position.

In *Speight v. Simonsen*, 115 Or. 618 (239 P. 542, 43 A. L. R. 1149), the plaintiff, who possessed neither a driver's license nor a license for his motorcycle, was injured when his vehicle collided with the defendant's car. In disposing of the contentions of the defendant, based upon these circumstances, the decision of this court stated:

''The lack of license had no causal effect in producing the mishap. It is urged that the plaintiff was a trespasser on the street, but he was not a trespasser upon any of the defendant's rights. The owner of the fee of the land covered by the street is not here complaining. The defendant cannot claim under the fee owner's right as against the trespasser. So far as violating the public rules of conduct embodied in the ordinance or in the statute, the governmental authority, either of the state or the city, had prescribed a remedy by which the plaintiff may be arrested and fined or imprisoned. This does not inure to the benefit of the defendant. In other words, the defendant is not in a position to claim either against a trespasser or upon violation of another's private right or of a public statute. His rights have not been invaded. In accordance with the great weight of authority the defense interposed, based upon the want of license, is not good, because although it amounts to negligence on the part of the plaintiff, it is not contributory negligence affect-

ing the case and does not transgress upon any of the rights of the defendant.''

From *Wilson v. Bittner,* 129 Or. 122 (276 P. 268, 64 A. L. R. 132), we quote:

''The further fact that he had received no special permit to operate a motorcycle and that he was at the time operating a motorcycle without any license were conditions surrounding the accident but not the proximate cause of the injury. The right of an unlicensed operator of a motor vehicle on a public highway to recover for personal injuries under circumstances similar to those involved here was considered and upheld in Speight v. Simonsen, 115 Or. 618, 239 P. 542, 43 A. L. R. 1149.''

In *Thiering v. Gage,* 132 Or. 92 (284 P. 832), the plaintiff claimed that he had acquired ownership to two cars by a transfer from a dealer, but conceded that in consummating this transaction he had not complied with the provisions of our statutes regulating the registration and licensing of cars. The defendant claimed that, therefore, title had not passed. Our decision, referring to the statutes in effect at the time of the transaction, stated:

''The purpose of all these provisions, among other objects, is to afford the purchaser clear evidence of his title, as the law provides that the certificate of title and registration receipt shall be prima facie evidence of ownership thereby implying that there may be other evidence either way to show title to an automobile. So we are of the opinion that, if a man buys his neighbor's automobile and pays for it in good faith, under the present statute it is his property, even though he may be subject to a fine for not forwarding proper evidence of his title to the secretary of state. He may be fineable for operating the machine under those circumstances, and there is a probability that he would be, and he may be fineable for failing to forward the evidence of his title to the proper authorities, but he does not lose his

ownership in the property and his title is good against the world, except such persons, creditors or innocent purchasers who have been misled by the record or by failure to make the proper changes in the record.''

In *Miller v. Service & Sales, Inc.,* 149 Or. 11 (38 P. (2d) 995, 96 A. L. R. 628), the plaintiff was injured by a car which carried defendant's dealer's license plates. He alleged that the defendant owned the car, that the driver was defendant's employee, and that the latter was acting within the scope of his employment when the accident occurred. We now quote from the decision:

''The registration certificate issued to the defendant company under and by virtue of chapter 428, Laws of Oregon, 1933, authorized 'the use and operation over and along the highways of the State of Oregon of all motor vehicles actually owned or controlled by such dealer and in actual use by him and the members of his firm and/or any salesman thereof who devotes all of his time to the sale of motor vehicles * * *'. It is presumed that the defendant company, in the use and operation of its automobiles on the highways of this state, would obey the law. Hence, it could reasonably be inferred that this car carrying the dealer's license plates was being driven by Erskine on the dealer's business.''

It will be observed that in *Speight v. Simonsen,* supra, we rejected the basis of the Massachusetts rule by holding that an injured plaintiff can not predicate his action upon any claim that the unlawfully licensed car was a trespasser. In that decision, and also in *Wilson v. Bittner,* supra, we held that the violation of the licensing act was not the proximate cause of plaintiff's injury. In *Theiring v. Gage,* supra, we held that violation of the licensing statute subjected the violator to punishment, but did not prevent him from establishing his title to the car unless an innocent person proved

that he was misled by the record. In *Miller v. Service & Sales, Inc.,* supra, we held that defendant's license upon the car created a disputable presumption of agency.

██ We are satisfied that our above-cited decisions correctly construed our automobile licensing act. The material point developed by those decisions, so far as the issue now before us is concerned, is that the presence upon a car of a defendant's plates creates a presumption that he owned the car; but the presumption is disputable. All other courts confronted with statutes similar to ours, so far as we are able to ascertain, have held to like effect: *Kruse v. Weigand,* 204 Wis. 195, (235 N. W. 426) ; *Greaf v. Breitenstein,* 97 Ind. App. 525, (187 N. E. 347) ; *Jones v. Detroit Taxicab & Transfer Co.,* 218 Mich. 673 (188 N. W. 394) ; *Ferris v. Sterling,* 214 N. Y. 249 (108 N. E. 406, Ann. Cas. 1916D, 1161), (annotated). See also *Cairns v. Worthy,* 1 M. P. R. 108, 16 British Ruling Cases, 139, and annotations. We believe that the use of defendant's license plates upon the car driven by Winters did not create a conclusive presumption that defendant owned the car, but only a disputable one.

The remaining five assignments of error are predicated upon two instructions given to the jury, and upon three requests for instructions made by the plaintiff, but refused by the trial judge. The two instructions given and the three denied were based upon our licensing act quoted in a preceding paragraph. The construction placed upon our act in the above paragraph disposes largely of the arguments advanced by the plaintiff in support of these contentions. Plaintiff, however, further criticizes the instructions given and mentioned in these assignments of error on the ground that they failed to submit to the jury her theory of the

case, and that they emphasized circumstances favorable to the defendant. We have carefully considered plaintiff's argument, but do not believe that the instructions are subject to these criticisms. In support of her requested instructions, the plaintiff argues that the instructions given did not sufficiently call the jury's attention to the presumption of ownership in the defendant arising from the presence of his license plates upon the car. We believe that the instructions fully developed this presumption. It follows that these five assignments of error reveal no merit.

We have carefully considered all other matters presented in plaintiff's brief, but do not believe that they reveal any error.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and KELLY and BELT, JJ., concur.