Argument of counsel.

[Filed November 17, 1891.]

# BERT MORSE *v.* UNION STOCK YARD CO.

SALE OF CHATTELS—DESCRIPTION—CONDITION PRECEDENT.—Where goods or chattels are sold by description, there is an implied condition that the goods or chattels delivered shall correspond to that description. By some authorities this is treated as a condition precedent, by others as an implied warranty.

IDEM—EXECUTED SALE—WARRANTIES.—When the sale becomes in part executed or consummated, the same facts which before constituted conditions precedent then become warranties.

IDEM—IMPLIED WARRANTY—FITNESS.—In the sale of goods or chattels by description, when the buyer has not inspected the goods, there is, in addition to the condition precedent that the goods or chattels shall answer the description, an implied warranty that they shall be fit for the particular purpose to which they are to be applied when that purpose is known to the vendor.

IDEM.—When a dealer undertakes to supply goods or chattels in which he deals that are to be applied to a particular purpose, and the buyer necessarily trusts to the judgment of the dealer, there is an implied warranty that they shall be reasonably fit for the purpose for which they are intended.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals. Affirmed.

*Gilbert & Snow*, for Appellant.

There was no implied warranty in this transaction. (*Barnard* v. *Kellogg*, 10 Wall. 383; *Hogins* v. *Plympton*, 11 Pick. 97; *Pearson* v. *Martin*, 38 Wis. 265; *Lawton* v. *Keil*, 61 Barb. 558; *Maxwell* v. *Lee*, 34 Minn. 511; *Locke* v. *Williamson*, 40 Wis. 379; *Carondelet Iron Works* v. *Moore*, 78 Ill. 65; *Ryan* v. *Ulmer*, 108 Pa. St. 332; 56 Am. Rep. 210.)

The acceptance of the cattle at Centralia is an admission on the part of the defendant that they came within the descriptive words "good beef cattle," used in his letter. (*Reed* v. *Randall*, 29 N. Y. 358; 86 Am. Rep. 305; *Conner* v. *Henderson*, 15 Mass. 319; 8 Am. Dec. 103; *Dounce* v. *Dow*, 64 N. Y. 411; *Fairbank Can Co.* v. *Metzger*, 43 Hun, 71; *Dutchess Co.* v. *Harding*, 49 N. Y. 323; *Mason* v. *Smith*, 8 N. Y. S. 301.)

The question of whether or not there was a warranty in this case was a question which should have been left to the jury instead of being decided by the court. (*Carondelet Iron Works* v. *Moore*, *supra*; *Pearson* v. *Martin*, 38 Wis. 269.)

XXI OR.—19.

*Glenn O. Holman,* for Respondent.

When defendant undertook to fill the order, the law implied a warranty that the cattle should be of a kind suitable for the purpose for which they were ordered. (*Hargous* v. *Stone,* 5 N. Y. 73; *Winsor* v. *Lombard,* 18 Pick. 60; *Passinger* v. *Thorburn,* 34 N. Y. 636; 90 Am. Dec. 753; *White* v. *Miller,* 71 N. Y. 129; 27 Am. Rep. 13; *Henshaw* v. *Robins,* 9 Met. 87; 43 Am. Dec. 367; *Osgood* v. *Lewis,* 2 H. & Gill, 495; 18 Am. Dec. 317; *Borrekins* v. *Bevan,* 3 Rawle, 23; 23 Am. Dec. 85; *Lamb* v. *Crafts,* 12 Met. 355; *Bradford* v. *Manly,* 13 Mass. 139; 7 Am. Dec. 122; *Buchanan* v. *Beck,* 15 Or. 570; *Wolcott* v. *Mount,* 36 N. J. L. 262; 13 Am. Rep. 438; *Hawkins* v. *Pemberton,* 51 N. Y. 204; 10 Am. Rep. 585.)

The vendee may retain the property after notice to vendor and sue on the warranty. (*Muller* v. *Eno,* 14 N. Y. 597; *Voorhees* v. *Earl,* 2 Hill, 288; 38 Am. Dec. 588; *Rust* v. *Echler,* 41 N. Y. 488; *Dorr* v. *Fisher,* 1 Cush. 271; *Hyatt* v. *Boyle,* 5 Gill & J. 121; 25 Am. Dec. 276; *Day* v. *Pool,* 52 N. Y. 418; 11 Am. Rep. 719.) The whole subject is discussed in Benj. on Sales, §§ 893, 894, 895, 897.

The measure of damages is the difference between the value of good beef and that sent. (*Muller* v. *Eno,* 14 N. Y. 597; *Hoe* v. *Sanborn,* 36 N. Y. 98.)

LORD, J. — This was an action brought by the plaintiff against the defendant to recover damages for a breach of an implied warranty in the sale of a lot of cattle. The contract consisted of an order contained in a letter directing the defendant to "get two car-loads of good beef cattle," and to "consign them to Centralia," and "to draw on Wooding & Co. for the amount." The cattle not being of the quality ordered, or fit for the purpose intended, the defendant was notified upon their delivery; but refusing to take any action in the premises, this action was brought, which resulted in a verdict and judgment for the plaintiff.

The contention for the defendant is, that upon the facts of the transaction there was no implied warranty that the cattle shipped upon the order were good beef cattle, and fit

for the purpose intended, as asserted by the charge of the court. Without doubt the general rule of law is, that upon the sale of any article of merchandise the seller does not become responsible for the quality of the article sold, unless he expressly warranted the quality or made some false and fraudulent representation in regard to it. "No principle of the common law," said Mr. Justice Davis, "has been better established, or more often affirmed, both in this country and in England, than that the sales of personal property, in the absence of an express warranty, where the buyer has an opportunity to inspect the goods, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim *caveat emptor* applies." (*Bernard* v. *Kellogg,* 10 Wall. 388.) This maxim, under the exceptions and limitations which the law has fastened upon it, furnishes a just and equitable rule for the transaction of business. It proceeds upon the hypothesis that where the purchaser has had an opportunity of inspecting the goods or chattels, and their defects could have been discovered by him, he is bound to exercise his judgment and take all reasonable precautions to protect his interests. In cases of this sort, where the purchaser has had the opportunity of inspecting and selecting the goods or chattels, the presumption is that he relies upon his own judgment, and takes upon himself the risk of their answering his purpose; otherwise he would have secured himself against loss by requiring an express warranty of them. But when the purchaser has not had an equal opportunity with the seller of inspecting such goods or chattels, or under the circumstances he has been compelled to rely upon his judgment, the maxim can have no application, and an implied warranty of their quality or of their being marketable, or of their fitness for the purpose intended when such purpose is known to the seller, is raised or recognized in his behalf. It is where the facts fall within the principle of exceptions of this sort that the reason of the maxim fails and an implied warranty of the goods sold is recognized in favor

of the buyer.. When the question is whether or not in a given case an implied warranty exists, it can only be determined by a full consideration of all the facts.

The evidence shows that the plaintiff was a butcher, and that he used beef cattle for retail in his market; that he gave an order to the defendant for two car-loads of good beef cattle, who accepted it, and selected and shipped the cattle to the place designated; that the plaintiff paid for the cattle before delivery by draft drawn on him by the defendant; that the plaintiff was not present to inspect the cattle, and had no opportunity to examine them until their arrival; that the defendant knew what the business of plaintiff was, and the purpose for which he wanted good beef cattle; that the cattle were not good beef cattle or beef cattle, but only stock cattle, and not fit for the purpose intended; that as soon as plaintiff saw the cattle he notified the defendant of their not being the quality and kind of cattle he ordered and unfit for his business purposes, but at the same time made a proposition as to part of them, which the defendant refused to accept, claiming that the cattle shipped fully complied with the order.

The relation which the defendant as seller and the plaintiff as buyer bear to these facts when analyzed is, that the defendant undertook to supply cattle of the description ordered, knowing the particular purpose for which they were to be used, with full opportunity of inspecting them, and discovering their defects or of ascertaining that they were not beef cattle and fit for the particular purpose for which they were ordered; that the plaintiff was not present to inspect them, nor did he know or have any opportunity of knowing their defects, or ascertaining that they were not beef cattle and not fit for the purpose for which they were intended, until after the cattle were delivered and paid for.

In applying the law to this state of facts, the trial court asserted in effect by its charge that there was an implied warranty on the part of the defendant that the cattle should be of the quality or answer the description ordered, and

when so ordered for a particular purpose, known to the defendant, that it, by undertaking to furnish the cattle, impliedly undertook that they should be reasonably fit for the purpose for which they were intended. The principle is stated that where goods are sold by description or particular designation, there is always an implied condition that the article or goods delivered shall correspond strictly with that description or designation. This is regarded by some of the authorities, especially in the United States, as an implied warranty that the article sold is of that description, and by others as a condition precedent. But the facts in this case obviate the consideration of that aspect of the question. The defendant had received the full consideration for the cattle, and consequently the contract had become in part executed when the cattle were delivered, and repudiation by the plaintiff of the contract for non-compliance with its terms in not furnishing good beef cattle had become impossible.

The language of DEPUE, J., in *Wolcott* v. *Mount*, 36 N. J. L. 272; 13 Am. Rep. 438, goes to this point: "The right to repudiate the purchase," he says, "for non-conformity of the article delivered to the description under which it was sold, is universally conceded. That right is founded on the engagement of the vendor, that by such description the article delivered shall correspond with the description. The obligation rests upon the contract. Substantially the description is warranted. It will comport with sound legal principles to treat such engagements as conditions in order to afford the purchaser a more enlarged remedy by rescission than he would have on a simple warranty; but when his situation has been changed, and the remedy by repudiation has become impossible, no reason supported by principle can be adduced why he should not have upon his contract such redress as is practical under the circumstances. In that situation of affairs the only available means of redress is a legal action for damages. Whether the action shall be technically considered an action on a warranty or an

action for the non-performance of a contract, is entirely immaterial." Reversing the order, he further says: "But in a number of instances it has been held that statements descriptive of the subject matter, if intended as a substantive part of the contract, will be regarded in the first instance as conditions, on the failure of which the other party may repudiate *in toto* by a refusal to accept, or return the article, if that be practicable; or if a part of the consideration has been received and rescission has become impossible, such representations change their character as conditions and become warranties, for the breach of which an action will lie to recover damages."

As has been suggested, strictly speaking the conditions do not become warranties, but the sale having become consummated, the same facts which before constituted conditions precedent now constitute warranties. That is one case. The description of the article sold ceases to be a condition but becomes a warranty, rendering the authorities holding the doctrine that the sale of a chattel as being of a particular description implies a warranty that the article is of that description, in point in support of the principle asserted in the instructions.

In *Winsor* v. *Lombard*, 18 Pick. 60, Shaw, C. J., said: "Every person who sells goods of a certain denomination or description, undertakes as a part of his contract that the thing delivered corresponds to the description, and is in fact an article of the kind, species and quality thus expressed in the contract of sale;   *   *   *   the rule being that upon a sale of goods by a written memorandum or bill of parcels, the vendor undertakes in the nature of warranting that the thing sold and delivered is that which is described. This rule applies whether the description be more or less particular and exact in enumerating the qualities of the goods sold."

In *White* v. *Miller*, 71 N. Y. 129; 27 Am. Rep. 13, Andrews, J., said: "The doctrine that the bargain and sale of a chattel of a particular description imports a contract or warranty that the

article sold is of that description, is sustained by a great mass of authority." So in *Wolcott* v. *Mount, supra,* DEPUE, J., said: "The doctrine that on the sale of a chattel as being of a particular kind or description a contract is implied that the article is of that kind or description, is also sustained by the following English cases: *Powell* v. *Horton,* 2 Bing. N. C. 668; *Barr* v. *Gibson,* 3 M. & W. 390; *Chanter* v. *Hopkins,* 4 M. & W. 399; *Nichol* v. *Godts,* 10 Ex. Ch. 191; *Gompertz* v. *Bartlett,* 2 E. & B. 849."

In *Foos* v. *Sabin,* 84 Ill. 564, the contract of sale was for fat cattle to be shipped for delivery at a future day, and the court held that where a contract was to sell fat cattle to be shipped for the market at a future day, he will be bound to pasture them so that they will, at the time agreed on for delivery, be in a suitable condition for sale as fat cattle in the market. While, therefore, in the sale of an existing chattel the law does not in the absence of fraud imply a warranty of the quality or condition, yet where the sale is of a chattel as being of a particular description, it does imply a warranty that the article sold is of that description. (*Hogins* v. *Plympton,* 11 Pick. 97; *Bradford* v. *Manly,* 13 Mass. 139; 7 Am. Dec. 122; *Hyatt* v. *Boyle,* 5 G. & J. 110; 25 Am. Dec. 276; *Whitlow* v. *Bunnell,* 14 U. Can. (Q. B.) 241.)

There is, however, where an article is sold by description besides the condition or warranty as it may be classed, an implied warranty that the article sold shall be marketable under the terms of the description, or reasonably fit for the purpose for which it is intended.

"In some contracts," said BRETT, L. J., "the undertaking of the seller is said to be only that the article shall be merchantable; in others, that it shall be reasonably fit for the purpose to which it is to be applied. In all, it seems to us it is either assumed or expressly stated that the fundamental undertaking is that the article offered or delivered shall answer the description of it contained in the contract. That rule comprises all others; they are adaptations of it to particular kinds of contracts of purchase and sale."

(*Randall* v. *Newson*, L. R. 2. Q. B. Div. 102.) In *Jones* v. *Just*, 3 Q. B. (L. R.) 197, a leading case, it was decided under a contract to supply goods of a specified description which the buyer has no opportunity of inspecting, the goods must not only in fact answer the specific description, but must be saleable or merchantable under that description.

"If a man," said Best, C. J., in *Jones* v. *Bright*, 5 Bing. 533, "sell an article, he thereby warrants that it is merchantable—that is, fit for some purpose. If he sell it for a particular purpose, he thereby warrants it fit for that purpose." If the contract be to supply for a particular purpose known to the seller a certain kind and quality of chattels which the buyer has no opportunity to examine before delivery, there is usually an implied warranty that the chattels supplied shall be reasonably fit for the special purpose intended by the buyer. (2 Benj. on Sales, § 645.)

"Where the purchaser," said Staples, J., " does not designate any specific article, but orders goods of a particular quality, or for a particular purpose, and that purpose is known to the seller, the presumption is the purchaser relies upon the judgment of the seller, and the latter, by undertaking to furnish the goods, impliedly undertakes they shall be reasonably fit for the purpose for which they were intended." (*Gerst* v. *Jones*, 32 Gratt. 521; 34 Am. Rep. 773.)

Likewise in *Best* v. *Flint*, 58 Vt. 543; 56 Am. Rep. 570, it was held that there is an implied warranty in the sale of hogs purchased for the market that they are fit for that purpose when the vendee, having no opportunity of inspection, trusts to the judgment of the vendor to select them, and both parties understand for what they are intended. (*Beals* v. *Olmstead*, 24 Vt. 114; 58 Am. Dec. 150; *Street* v. *Chapman*, 29 Ind. 142; *Howard* v. *Hoey*, 23 Wend. 350; 35 Am. Dec. 572; *Hanger* v. *Evins*, 38 Ark. 334; *Gammell* v. *Gunby*, 52 Ga. 504.)

While this rule applies with particular force where the vendors are the manufacturers, it is not limited to them but is extended to cases where one merchant or dealer contracts to supply goods of a specific description to another merchant

or dealer.   (*Jones* v. *Just, supra; Lewis* v. *Rountree,* 78 N. C.
323; *Hanks* v. *McKee,* 2 Litt. (Ky.) 227; 42 Am. Dec. 265;
*Ketchum* v. *Wells,* 19 Wis. 34; *Whitaker* v. *McCormick,* 6 Mo.
App. 114; *Flint* v. *Lyon,* 4 Cal. 17; *Chicago, etc. Co.* v. *Tilton,*
87 Ill. 547; *Messenger* v. *Pratt,* 3 Lans. 234.)

Nor is it material whether the goods or chattels are to be
made or supplied to order; there is always an implied
warranty that they are reasonably fit or suitable for the
particular use intended by the purchaser, provided the use
or purpose to which they are to be applied is known to the
seller when the order was given.   "Where a buyer," says
COCKBURN, J., "buys a specific article, the maxim *caveat
emptor* applies; but where the buyer orders goods which
shall be applicable for the purposes for which they are
ordered, there is an implied warranty that they shall be
reasonably fit for that purpose." (*Bigge* v. *Parkinson,* 7 Hurl.
& N. *955.)   So that when a dealer undertakes by contract
to supply goods or chattels in which he deals that are to be
used or are intended for a particular purpose, and the pur-
chaser necessarily under the circumstances trusts to his
judgment, there is an implied warranty that they shall be
reasonably fit for the use or purpose to which they are to
be applied.

The plaintiff had no opportunity to inspect the cattle,
but the defendant undertook to select and supply them,
knowing the purpose for which he wanted them, and that
no other than beef cattle would be fit for that purpose.   The
defendant could not have undertaken to supply the cattle
on any other supposition than that they were saleable as
beef cattle and fit for the purpose to which they were to be
applied.   Necessarily, then, the defendant had knowledge
and information in the premises, and the plaintiff must
have relied upon his judgment to fill the order, as he clearly
could exercise no judgment of his own.   As Mr. Justice
MELLOR said:   "This appears to us to be at the root of the
doctrine of implied warranty; and in this view it makes no
difference whether the sale is of goods specially appropriated

to a particular contract or to goods answering to a particular description." (*Jones* v. *Just, supra.*)

We do not think upon the facts as disclosed by this record there was any error in the instructions excepted to. This result renders it unnecessary to consider but one other objection, namely, that the plaintiff must be taken to have accepted one-half of the cattle as good beef cattle, and fit for the purpose for which he wanted them, as disclosed by his letter upon the delivery of the cattle, making a proposition to keep half of them if the defendant would furnish another car-load of good cattle.   His order and the facts as disclosed indicate that the plaintiff needed beef cattle quite badly for the supply of his market, as he states in his order that he had only two head of cattle left.   But in his letter making this proposition he also says and charges that the defendant had taken "his hard money for property that, for my use, you know is perfectly worthless."   So it is clear that he did not think he had received such cattle as he had ordered and as were fit for the purpose intended; but as he had paid for them as good beef cattle, and was out his money, he was in a position to compromise, and betrayed a disposition by his proposition to adjust the matter without further trouble or difficulty.   But however that may be, the defendant declined to entertain or consider his proposition, claiming that the cattle were such as complied with the order, and the defendant cannot avail itself of its benefits now, as its conduct relegated the matter to its original status and necessitated this suit for the adjustment of their differences.

We think that the judgment must be affirmed.