Argued May 18; reversed May 31, 1933

In re Buswell's Estate
BOONE *v.* LOCKHART
(22 P. (2d) 317)

*C. M. Hodges,* of Portland (Hodges & Gay, of Portland, on the brief), for appellant.

*Cake & Cake,* of Portland, for respondent.

KELLY, J.   On February 23, 1928, claimant herein, G. B. Boone, a sole trader at Dallas, Texas, under the assumed name of G. B. Boone Lumber Company, ordered from Harriet E. Buswell, under the assumed name of Buswell Lumber Company, Portland, Oregon, 21 M. feet of various sizes of Pondosa pine lumber, selected from a salesman's list by description, which stated that said lumber was slightly stained, and claimant's order included the condition that shipment thereof should be made provided the stock was only slightly stained.

Claimant alleges that when the lumber, shipped pursuant to said order, arrived at Dallas, Texas, it was wet, heavy, soggy and badly stained. It is conceded that there was but 17,211 feet of it.

Harriet E. Buswell died at Portland, Oregon, during the fall of 1929, and on or about October 17, 1929, John G. Lockhart was appointed executor of her estate; and qualified as such.

On or about February 7, 1930, claimant presented a claim to said executor in the sum of $1,028, which was rejected, and upon direction of the probate court, claimant filed a complaint alleging the foregoing facts, claiming that the Buswell Lumber Company breached said contract in shipping only 17,211 feet of lumber and in that the lumber so shipped was wet, heavy, soggy and badly stained, and averring that claimant has been damaged in said sum of $1,028.

After denying that the condition of said lumber did not conform to the description in the order, and the salesman's list, the executor, as an affirmative defense, alleges that after the car, containing said lumber, arrived in Dallas, Texas, on or about May 4, 1928, 2,000 feet of said lumber, more or less, was removed

by the petitioner and the same was thereafter used, whereby, and, by reason whereof, said carload of lumber was accepted by the petitioner.

It will be noted that thus acceptance is interposed as a defense to a claim based upon a breach of warranty. There is no reference in the answer to any express or implied agreement of the parties whereby claimant waived his claim for damages, nor to any alleged failure on the part of the buyer to give notice to the seller of the alleged breach within a reasonable time after the buyer knew, or ought to have known, of such breach.

The Uniform Sales Act as adopted in Oregon contains the following provision:

"Acceptance does not bar action for damages.— In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor". Section 64-509, Oregon Code 1930.

The answer of the executor herein does not suggest that notice of the breach by his decedent was not seasonably given by claimant, although, in his brief, that point is argued. We think that it is not within the issues, because not pleaded; but, even if it were, the record is replete with notice of that character.

On April 9, 1928, the following night letter was telegraphed to the Buswell Lumber Company by claimant:

"Car eighteen two ten" (containing the lumber in suit) "refused by customer account being wet, heavy and badly stained   *   *   *".

On April 12, 1928, the following telegram was likewise sent to the Buswell Lumber Company by claimant:

"Have received no reply to our wire ninth relative car eighteen two ten. Some action should be taken as stock will continue to damage in its present condition and customer is insisting on some disposition. Answer quick".

On April 12, 1928, the following letter was sent:

"April 12th, 1928. ·

"Buswell Lumber Co.

"Portland, Oregon.

"Gentlemen:

With reference to car G. N. 18210, recently shipped to ourselves, Dallas, would state that as per copy of our wire attached of the 9th, this car has been refused by our customer account of being wet, heavy and badly stained, and in order to save demurrage from accruing on the shipment, and further that customer would have opportunity to examine the stock more closely by unloading rather than making a car door inspection, we prevailed upon them to go ahead and unload, pending a satisfactory adjustment. In our wire we also asked if you had an inspector in this territory who you could have come to Dallas to arrive at a satisfactory adjustment, as we feel like if you had a representative on the ground that you would be able to better satisfy the shippers of the car, as there is going to rather a heavy claim, account of the condition of the stock, and furthermore, it is going to be necessary for the stock to be kiln dried before it can be used. This wire was sent to you on the 9th by night letter, and we thought surely by this time we would have been in receipt of some acknowledgment from you on the complaint, and some advice as to what action you desire to take, but up to the present writing we have received no reply from you, so this morning we sent you a day letter, as per copy enclosed calling attention to the fact that

this stock will continue to damage in the shape it is in at the present time, and also that customer is insisting that we make some disposition.

"We are in hopes that our second wire will reach you promptly, and that you will let us have your instructions without delay.

"Yours very truly,
"G. B. Boone Lumber Company
GBB           "By                                    "

Other telegrams were interchanged, and on April 14, 1928, the following letter was sent by claimant:

"April 14th, 1928.
"Buswell Lumber Co.
"Portland, Oregon.
"Gentlemen:

We received your wire this morning relative to car G. N. 18210, and after showing your wire to our customer, The Rogers Lumber & Mfg. Co. Mr. Rogers said that he felt he would be unable to arrive at a satisfactory adjustment on this stock, as he figures that a large precentage of the lumber will fall below grade account of having been shipped wet, and consequently becoming badly stained, and that he would prefer to have the stock passed on by an official inspector. He has agreed to abide by the decision of the official inspector, therefore we wired you today that customer was insisting on official inspection, and asking that you arrange to have the matter handled just as quickly as possible, as the stock in its present condition is going to continue to damage, until it is rehandled.

"We will therefore appreciate it if you will order the inspection at once, advising us just when we may expect the inspector to reach Dallas. We would also suggest that you have the inspector get in touch with us when in Dallas, so that we can go with him to the plant of Rogers Lumber & Mfg. Co.

"Yours very truly,
"G. B. Boone Lumber Company,
"GBB           By  ·                            "

On April 24, 1928, the following letter was also sent to defendant:

"April 24th, 1928.

"REGISTERED MAIL

"Buswell Lumber Co.
"Portland, Oregon.

"Gentlemen:

"The attitude which you have taken towards the complaint which we have reported to you on car GN 18210 is not at all pleasing to us, as we are being severely criticised by our customer account of our inability to furnish them with some information as to what is being done towards have the stock passed on by an official inspector. We have repeatedly wired you for information, but you seem to simply ignore our request, and we cannot hardly appreciate your treating us in this manner.

"To show our willingness to perform our part of this contract of purchase we remitted to you really more than the 90% of the net amount of the invoice, feeling that we were dealing with a reputable concern, but your action would leave the impression that this is not a fact, however, we hope this is not the case, and that it has simply been an oversight on the part of some one in your office is not giving us the advice that we requested from you.

"If your records show that this stock is up to grade, and feel that an official inspection with verify same, we see no reason why you would hesitate for one moment to order the inspection made, but if this is not the case, then we will be compelled to ask that you reimburse us for the advance payment made also the freight, handling and unloading and storage charges, and the stock will be turned back to you for other disposition.

"As our customer was insisting that some advice be furnished him as to what action is being taken towards having the stock officially passed on, it was

necessary for us to wire you again today as per copy attached, and we are in hopes that we will have some wire advice from you without delay.

"Kindly be good enough to give this matter the attention it deserves and let us know what you intend doing.

"Yours very truly,

"G. B. Boone Lumber Company,

"GBB      "By               "

On April 30, 1928, the Buswell Lumber Company mailed claimant the following letter:

"Portland, Oregon,
American Bank Building,
April 30, 1928.

"G. B. Boone Lumber Co.,
"Dallas, Texas.

"Gentlemen:

"We appreciate your letter of April 24th and possibly we were a little hard in our handling of the car shipped you and diverted to Rogers Lumber & Mfg. Company.

From your messages we did not gather that the Rogers people simply refused to entertain the car at any price or compromise price and what we wanted to get was an expression from you as to what compromise could be made and we would then weigh that with the cost of having an inspection made.

We have the greatest confidence in the lumber that was shipped you and it is probably just as well to have it inspected in view of the fact that your client has absolutely declined the car.

We are glad you wrote us as you did on April 24, and wish to state that the matter of our having had cash advance from you had no bearing on our attitude. You know you could compell refund of this money if it developed that the car was not as sold you.

It would be well for you to be looking up a place to dispose of this shipment as the lumber will have to be sold regardless of how inspection goes.

Respectfully yours,

Buswell Lumber Company
J. G. Lockhart, Mgr.
Portland, Oregon''.

From the first of the above communications to the date of the trial, the claimant never varied from the position that as to quality the lumber failed to conform to the description in the salesman's list and to the terms of his order. It will be noted also that no complaint is voiced because the lumber shipped was less in quantity than that which claimant ordered.

This leaves the question of whether, as to quality, the lumber shipped actually did conform to the terms of the contract of sale. The only direct testimony in the record is to the effect that, at least, part of it did not.

The executor did not produce any witness having knowledge of the condition of the lumber in suit when shipped; and we find nothing in the record which refutes claimant's charge that, at least, as to part of the lumber, there was a breach of the contract.

Claimant defended an action in Texas brought against him for storage charges upon said lumber and therein he attempted to counter-claim because of the refusal of the plaintiff therein to whom he had sold it, to accept it, but was unsuccessful. In the proceeding at bar, he seeks to recover court costs therein, attorney's fees and his profit on said resale less $116 paid him for the 2,000 feet of lumber used by his purchaser.

■ Under the record, we think acceptance has been proven. After such acceptance, the property was destroyed by fire. Its destruction could not affect the executor's liability herein.

■ It remains then to apply the proper measure of damages, which is the difference between the value of the lumber actually furnished and the value it would have had if it had been of the quality represented by the contract. Claimant's letter of May 31, 1929, outlines the terms of a settlement which claimant then considered equitable. This convinces us that claimant received the full value for which he contracted except as to,

1,378 feet off grade according to inspection
     reports at $24 _____$33.07

1,730 feet 4/4
1,280 feet 6/4
2,165 feet 8/4
_____

5,175 feet containing heavy stain at $10 while
     order called for only slightly stained
     stock _____ 51.75
                                          ——————
                                          $84.82

The executor, basing his position upon the report of the inspector, was unwilling to allow the second of the above items, but in the absence of any other showing said report is insufficient to sustain the executor in that regard.

■ We cannot allow claimant's demand for court costs, storage fees, attorney's fees and profit on resale for the reason that the record does not disclose that the same terms controlled such resale as those existing between the parties hereto. In fact, it indicates that the resale contract contemplated white pine lumber

while the contract in suit covered only yellow pine. We think that interest should be allowed claimant from the date of the last above mentioned letter, namely May 31, 1929.

It is, therefore, ordered and adjudged that the judgment of the circuit court in probate be and the same is hereby reversed; and that claimant have and recover judgment herein against the estate of Harriet C. Buswell, deceased, and against John G. Lockhart, as executor thereof, in the sum of $84.82, together with interest thereon at the rate of six per centum per annum from the 31st day of May, 1929, and for his costs and disbursements in this court.

CAMPBELL, BELT, and ROSSMAN, JJ., concur.

RAND, C. J., did not participate in this opinion.