Argued November 10; reversed December 21, 1937; rehearing denied
January 18, 1938

# W. S. MAXWELL CO. *v.* SOUTHERN OREGON GAS CORPORATION

(74 P. (2d) 594, 75 P. (2d) 9; 114 A. L. R. 697)

Department 2.

170

*W. W. Balderree*, of Grants Pass, for appellant.
*Chas. W. Reames*, of Medford, for respondent.

LUSK, J. This is an action for a breach of warranty of title in the sale of an automobile. In a trial before a jury the court, at the conclusion of plaintiff's case, entered a judgment of involuntary nonsuit, from which this appeal is taken. The question for our determination is whether the plaintiff produced substantial evidence in support of the material averments of the complaint.

Those averments are, in substance, that on August 15, 1935, the defendant sold to the plaintiff a Chevrolet automobile for the sum of $550; that defendant warranted the title and plaintiff relying upon such warranty sold the automobile to one Clarence V. Bells, to whom, in turn, plaintiff warranted the title; that in fact the defendant never had title, by reason whereof Bells was subsequently compelled to deliver the car to the real owner and plaintiff was compelled to refund the purchase price to Bells.

The defendant denied that it sold the car to plaintiff. It contended on the trial that the sale was made by it to Bells; that plaintiff was a mere agent or intermediary in finding a purchaser, and, hence, that there was no warranty of title by the defendant to the plaintiff. The circuit court sustained this claim and on that ground rested its ruling. We shall first consider that question.

The record discloses that the plaintiff, W. S. Maxwell Company, a corporation, is a duly licensed dealer in automobiles under chapter 1 of title 55, Oregon Code 1930, and the amendments thereof. The defendant being in possession of the Chevrolet sedan in question, and being in the market for a new "Chevrolet pick-up", approached the sales manager of the plaintiff, Harold Prestle, and offered the sedan as a trade-in on a pick-up. Prestle testified: "We at that time found a prospective customer for this 1934 Chevrolet sedan and with the approval of the Southern Oregon Gas Corporation sold it to this prospective customer, Clarence V. Bells, a short time later—ten days or something—we delivered them a new pick-up and gave them credit for this car on this new pick-up." He further testified as follows:

"Q. What if anything was the purchase price paid the defendant, Southern Oregon Gas Corporation, for the car?

"A. $550. * * *

"Q. What was done by the plaintiff with reference to the car after it was purchased from the defendant?

"A. It was sold to Clarence V. Bells."

The witness identified, and there was received in evidence, an invoice dated August 15, 1935, covering a sale of the Chevrolet sedan by W. S. Maxwell Company to Clarence V. Bells for $550, plus the sum of $86.52, which was added to the purchase price for interest and insurance.

The provisions of section 55-203, Oregon Code Supplement 1935, were not complied with. By the terms of that section, upon the sale or transfer of a motor vehicle to a licensed dealer, the transferor is required to indorse the certificate of title to the vehicle, and the dealer is not required to present the registration card and the certificate of title to the secretary of

state until such time as the motor vehicle has been sold by the licensed dealer. But it is provided that the dealer immediately shall notify the secretary of state that the motor vehicle has been transferred to him. It is further provided that upon the sale of the motor vehicle by the licensed dealer, the latter shall deliver to the transferee the assigned certificate of title received by him, which certificate of title shall be forwarded to the secretary of state, etc:

The defendant's certificate of title was not produced, but oral evidence was received which indicates that this certificate was held by the Grants Pass and Josephine Bank, which had a mortgage on the car, and that it was indorsed by the defendant and transferred by the bank directly to Bells. It is further inferable from the testimony that Bells paid to the plaintiff $150 of the purchase price by turning in a Durant sedan; that $34 was paid in a manner not explained, and that the balance of .$452.52 was represented by a contract of conditional sale which ran to the bank, replacing the latter's mortgage. Thus, assuming the transaction to have been a sale by defendant to plaintiff, and thence by plaintiff to Bells, the provisions of the statute, which required that the certificate of title be transferred to plaintiff and that plaintiff notify the secretary of state and deliver to Bells the assigned certificate of title, were ignored.

But this failure to obey the law is not conclusive against plaintiff's theory: *Thiering v. Gage*, 132 Or. 92 (284 P. 832); *Henry v. Condit*, 152 Or. 348 (53 P. (2d) 722, 103 A. L. R. 131); *Fagg v. Massachusetts Bonding and Insurance Company*, 142 Or. 358 (19 P. (2d) 413). The result of these decisions is, that the legislature has not provided an exclusive method of transferring title to motor vehicles. A person makes

himself subject to a penalty by failing to comply with these provisions, and where the rights of third parties, who rely on the record title, intervene, an attempted sale may be voided. But as Mr. Justice McBride said in *Thiering v. Gage,* supra, at page 103:

"The purpose of all these provisions, among other objects, is to afford the purchaser clear evidence of his title, as the law provides that the certificate of title and registration receipt shall be prima facie evidence of ownership thereby implying that there may be other evidence either way to show title to an automobile. So we are of the opinion that, if a man buys his neighbor's automobile and pays for it in good faith, under the present statute it is his property, even though he may be subject to a fine for not forwarding proper evidence of his title to the secretary of state."

■ In this case, in view of the presumption of obedience to law, and the prima facie effect which the statute gives to the certificate of title and registration card (known as registration receipt in the old legislation), the method pursued by the parties to this transaction is evidence against the plaintiff's claim. But it is not conclusive, and if there is other evidence from which the inference of a sale by defendant to plaintiff and a subsequent sale by plaintiff to Bells may be drawn, a question for the jury arises on that issue. We think that the portion of the testimony to which we have referred, describing the dealings between the parties, constitutes evidence of such a sale—a transaction in which the plaintiff bought the Chevrolet sedan from defendant and sold another motor vehicle to the defendant, giving credit to the latter in the amount which plaintiff was able to obtain on a resale of the Chevrolet sedan, a not unusual method of dealing in the automobile business. The fact that the resale of the Chevrolet sedan must be with the approval of the defendant does not necessarily negative the idea of a

sale to plaintiff nor compel the conclusion that plaintiff was a mere agent of the defendant to find a buyer. It is, at best, but evidence in support of that theory, for in view of the other facts and circumstances in the record, a trier of the facts might reasonably conclude that, upon the approval of defendant being obtained, the sale to the plaintiff was to be consummated. Certainly the plaintiff must have so regarded the transaction, because it dealt with the car as its own, issued its own invoice as a memorandum of the sale to Bells, and subsequently, when called on by Bells to make good, refunded the purchase price to him.

The defendant contends that the complaint is fatally defective and the proof insufficient because there is neither allegation nor evidence that plaintiff gave the notice required by section 64-509, Oregon Code 1930 (§ 49, Uniform Sales Act), which reads as follows:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

In *Boone v. Lockhart*, 143 Or. 299 (22 P. (2d) 317), this court held, in an action to recover damages for breach of warranty in the sale of lumber, that the question whether the plaintiff had complied with the statutory requirement to give notice of breach of warranty was not within the issues, because failure to give such notice was not pleaded by the defendant. The court said (page 301):

"The answer of the executor [defendant] herein does not suggest that notice of the breach by his de-

cedent was not seasonably given by claimant, although, in his brief, that point is argued. We think that it is not within the issues, because not pleaded; but, even if it were, the record is replete with notice of that character.''

■ An examination of the briefs in that case discloses that the point was not adequately presented and no authorities were cited. From the opinion, it appears that there was ample evidence that the statutory notice was given, but in the discussion of the particular question, we are convinced, after a thorough examination of the decided cases, that an erroneous construction of the statute was adopted. The clear and practically unbroken current of authority establishes the doctrine that the requirement of notice, to be given by the vendee charging breach of warranty, is imposed as a condition precedent to the right to recover, and the giving of notice must be pleaded and proved by the party seeking to recover for such breach: *McMurray v. Vaughan's Seed Store,* 117 Ohio St. 236 (157 N. E. 657); *Hutchinson v. Renner,* 28 Ohio App. 22 (162 N. E. 451); *Marmet Coal Company v. People's Coal Company,* 226 Fed. 646, 651; *Rothenberg v. Shapiro,* 140 N. Y. Supp. 148; *Sorensen v. S. A. Companhia,* 180 N. Y. Supp. 201; *Regina Company v. Gateley Furniture Company,* 157 N. Y. Supp. 746, 749 (171 App. Div. 817); *Marsh Wood Products Company v. Babcock and Wilcox Company,* 207 Wis. 209, 224 (240 N. W. 392); *Bloch v. Eastern Mach. Screw Corporation,* 281 Fed. 777; II Williston on Sales (2d Ed.), § 484-a p. 1259, 50 L. R. A. (N. S.) 783, Note, 55 C. J. 807, § 788. See restatement of the Law, Subject Contracts, Vol. 2, § 412.

We, therefore, find it necessary to overrule the case of *Boone v. Lockhart,* supra, insofar as it holds that failure to give notice of breach of warranty under

this statute is a matter of defense to be pleaded and proved by the vendor.

■ We are of the opinion, however, that the provision was not intended to apply to a case of this kind.

"That section apparently has to do with the sale of goods, whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances which causes money damages to the vendee." *Kennedy v. F. W. Woolworth Company*, 200 'N. Y. Supp. 121 (205 App. Div. 648).

It has been held that notice is necessary where the breach consists of a failure to deliver on time: *American Manufacturing Company v. U. S. Shipping Board Emergency Fleet Corporation*, 7 Fed. (2d) 565; *Wildman Manufacturing Company v. Davenport Hosiery Mills*, 147 Tenn. 551 (249 S. W. 984); *Trimount Lumber Company v. Murdough*, 229 Mass. 254 (118 N. E. 280). But we have not been referred to any case, nor have we found any, in which this section has been invoked for failure to give notice of breach of warranty of title.

When we consider the reasons which underlie the enactment of this statute, it becomes apparent that it was never intended to be applied in a case like this. The subject is discussed in II Williston on Sales, (2d Ed.) § 484, from which we quote:

"As will be seen from the discussion in the following sections of this book many states hold that at Common law acceptance of title necessarily involves a release of the seller's liability from certain of his contractual obligations in regard to the goods. In other states this is denied unless there is an intent to surrender the seller's obligations. Under the Common law as expounded in both of these classes of jurisdictions great difficulties in determining questions of fact are inevitable. A rule seems desirable which is capable of some certainty in its application and which at the

same time avoids the hardship on the buyer of holding that acceptance of title necessarily deprives him of the seller's obligations, and also avoids the hardship on the seller of allowing the buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when they were received. With this in mind the positive requirement of prompt notice was inserted in the statute. Such notice or protest has in some jurisdictions been regarded as important evidence bearing on assent to receive defective goods in full satisfaction, but the statute makes it an absolute condition. Subject to this requirement, the buyer's right against the seller is not destroyed by acceptance of title.''

The classes of the seller's ''obligations in regard to goods'' are discussed by Mr. Williston in the succeeding sections of his work. They relate to quality, quantity, delay in performance, and kindred subjects. As the supreme judicial court of Maine pointed out in *Morse v. Moore*, 83 Me. 473, 481 (22 Atl. 362, 13 L. R. A. 224, 23 Am. St. Rep. 783), the fact of acceptance ''raises considerable presumption that the article delivered actually corresponded with the agreement'', and ''is some evidence of a waiver of any defect of quality, even if the article did not so correspond—evidence of more or less force according to the circumstances of the case''. See, in this connection, *Morse v. Union Stockyards Company*, 21 Or. 289, 298 (28 P. 2, 14 L. R. A. 157). ''The Sales Act'', Williston concludes (P. 1271), ''for this question of fact substitutes a rule of law. The merits of the statutory rule are its certainty and the limitation of time for disputing the correctness of the seller's performance.''

■ So far as we are aware, it has never been held or even suggested that a presumption arises from the acceptance of merchandise that the seller's title is

good, or that such acceptance is some evidence of a waiver of a defect in the title. It seems to be reasonably clear that this statute was only intended to apply to those cases in which, under the common law, the fact of the acceptance of the goods might be said to have some bearing on the validity or the good faith of the buyer's claim of breach of warranty. We think, therefore, that no duty devolved upon the plaintiff to give the notice called for by section 64-509, Oregon Code 1930, and that the failure to give such notice is no obstacle to its right to recovery.

■ The defendant urges that the plaintiff was under no legal obligation to refund the purchase price of the car to Bells, for the reason that the plaintiff did not warrant the title. The argument is that the defendant indorsed and transferred the certificate of title to Bells, and, in so doing, gave an express warranty of title as required by section 55-203, Oregon Code 1935 Supp., and that this express warranty excludes the idea of an implied warranty of title from plaintiff. The defendant invokes subdivision six of section 64-315, Oregon Code 1930 (§ 15 Uniform Sales Act), which reads: "An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith." This provision is part of a section which deals with implied warranty of quality or fitness for a particular purpose, and in our opinion, has no application where the question is one of warranty of title.

Section 64-313, Oregon Code 1930 (§ 13 Uniform Sales Act), provides as follows:

"In a contract to sell or a sale, unless a contrary intention appears, there is—

"(1) An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods,

and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass.

"(2) An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.

"(3) An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made."

■ If the transaction was such as the plaintiff contends, namely, a sale by it to Bells, we think that it cannot be said, at least as a matter of law, that the indorsement and transfer of the paper title by the defendant conclusively establishes an intent on the part of the plaintiff not to give the warranties specified in the foregoing statute.

We come finally to the defendant's claim that there is no evidence in the record that the automobile was taken from Bells by the true owner.

At common law there is a diversity of judicial decision as to when the right of action of a purchaser arises for breach of warranty of title, some courts holding that if the seller did not have a good title when he sold the goods there was then an immediate breach of his obligation; and others that no cause of action arises until the buyer's possession has been interfered with. Mr. Williston says (Vol. 1, (2d Ed.) 428, § 221):

"The decisions allowing an immediate right of action hold, in effect, that the seller is subject to a warranty of title, strictly so called. The other decisions limit the obligation of the seller in effect to a covenant of quiet enjoyment. The Sales Act, following the provisions of the English statute, provides that the seller impliedly warrants both title and quiet enjoyment. The effect of this provision would seem to be to give the

buyer the right to proceed immediately, though his possession was not disturbed, and if later his possession was interfered with, he could bring another action on the implied covenant of quiet enjoyment and recover the damages which he failed to recover in the first action.''

If this view of the law be correct, then, so far as the question of the sufficiency of plaintiff's evidence is concerned, it is immaterial whether the proof establishes that the car was taken possession of by the true owner, since there was ample evidence from which the jury could find that it had been stolen and that neither the defendant nor the plaintiff ever acquired title to it.

■ But, assuming that it was necessary for the plaintiff to prove that Bells' possession was interfered with by the true owner, we believe that the plaintiff made a case sufficient to go to the jury on that issue. The following facts appear in the record: A 1934 Chevrolet sedan, motor No. 4142515, was purchased on March 17, 1934, by one Antonia Lombardino from the Allen Chevrolet Company of North Kansas City, Missouri. Antonia Lombardino, one evening, left the car parked on a street in Kansas City for a few minutes. On returning, the car was gone and she never saw it thereafter.

The motor number on all Chevrolet automobiles is stamped on the motor in two different places, one on the outside of the motor and the other, the so-called secret number, under the valve cover plate, where it is not visible on casual inspection. At the time of the transaction between the plaintiff and defendant, the outside number of the car here in question, which is a 1934 model, had been altered so as to read 4142616, but the inside number was 4142515. In December, 1935, C. Ralph Clark, who described himself as staff adjuster for the General Exchange Insurance Corporation, took

possession of the car, it being then stored in the garage of the plaintiff. He had with him at the time a document, received in evidence at the trial as exhibit "G", and which consists, among other things, of a photostatic copy of a certificate of title of a motor vehicle purporting to be signed by the secretary of state and the commissioner of motor vehicles of Missouri, and certifying that General Exchange Insurance Corporation is the legal owner of a 1934 Chevrolet sedan, engine No. 4142515. This certificate is dated October 19, 1934, and contains, on its back, an assignment of title to one H. J. Bringle by General Exchange Insurance Corporation, dated January 13, 1936, and attached to the document is a certificate executed by Earl Snell, secretary of state of the state of Oregon, which reads in part as follows:

"That I have carefully compared the annexed photostatic copy of the state of Missouri, certificate of title, No. 4165537, issued to Chevrolet sedan, motor No. 4142515, in the name of the General Exchange Insurance Corporation of Kansas City, Missouri, on the back of which said car is assigned to H. J. Bringle, 330 North Holly Street, Medford, Oregon by said General Exchange Insurance Corporation, with the original thereof on file in my office, and that the same is a full, true and correct transcript therefrom and the whole thereof, together with all endorsements thereon."

Other portions of this exhibit consist of a copy of an application for a certificate of title to a 1934 Chevrolet sedan, motor No. 4142515, made by H. J. Bringle to Earl Snell, secretary of state, under date of January 14, 1936, and a copy of a certificate of title issued on that date to H. J. Bringle, and covering the car so described, with this further certificate executed by the secretary of state:

"That I have carefully compared the annexed transcript of the application of H. J. Bringle, 330 N. Holly, Medford, Oregon, for certificate of title to the above

182

described vehicle, title, No. 639175 having been issued to said vehicle January 27, 1936, at the time application was made, with the original thereof, and find the same to be a full, true and correct transcript therefrom and of the whole thereof, together with all endorsements thereon; and that pursuant to the application of H. J. Bringle, original certificate of title No. 639175 was issued to said vehicle, a carefully compared and correct copy of which is annexed hereto:

"I further certify that pursuant to the application for certificate of title by Purchaser, appearing thereon, certificate of title No. A639175 was issued to W. F. Wills, Box 294, Rogue River, Oregon, on January 27, 1936, and that the title to said motor vehicle now stands on records in this office in the name of W. F. Wills, 1936 Oregon license number 200025, 1937 Oregon license number 216571."

Section 55-202, Oregon Code Supplement 1935, provides:

"No certificate of title shall be issued by the secretary of state for a motor vehicle from another state, unless with the application for said certificate of title there is surrendered the certificate of title issued by such other state, if said state requires certificates of title, and if said state does not require certificates of title then upon the surrender of the registration card."

As we construe this section, it impliedly confers upon the secretary of state the authority to issue a certificate of title to an automobile from another state, based upon the evidence contained in the certificate of title issued by such other state. This is the construction which the secretary of state has placed upon the section, as is apparent from exhibit "G". He has recognized the certificate of title issued by the state of Missouri to General Exchange Insurance Corporation, and upon the faith of that instrument has issued his own certificate of title to Bringle, the transferee, from the General Exchange Insurance Corporation. In other words, this official, charged with the duty of adminis-

tering the motor vehicle act, has attached evidentiary value to the Missouri certificate on file in his office, and we think that the courts should do no less. See *Rocco v. Server*, 89 Ind. App. 457 (165 N. E. 335); *Sidle v. Goldman*, 107 Pa. Supr. Ct. 13, 18 (162 Atl. 340).

So, to summarize our views on this phase of the case, there is evidence that the Chevrolet sedan, which is the subject matter of this controversy, was the same Chevrolet sedan that Antonia Lombardino bought in North Kansas City, Missouri, in March, 1934, there is evidence that this automobile was stolen from Antonia Lombardino; and there is evidence that in December, 1935, at the time that General Exchange Insurance Corporation, through its agent, took possession of the car, it had title to it and the right to seize it.

We have given careful consideration to all the numerous contentions which the respondent has vigorously advanced, and have discussed those which we deem worthy of discussion, and our conclusion is that there is substantial evidence in the record in support of all the material allegations of the complaint and that, consequently, the circuit court erred in granting the defendant's motion for a judgment of involuntary nonsuit.

The judgment of the circuit court must, therefore, be reversed and the case remanded for further proceedings not inconsistent with this opinion.

BEAN, C. J., and BAILEY and RAND, JJ., concur.

---

Petition for rehearing denied January 18, 1938

ON PETITION FOR REHEARING

(75 P. (2d) 9)

LUSK, J. In the opinion reversing the judgment, we hold that § 64-509, Oregon Code 1930, which re-

quires the buyer of goods to give notice of breach of warranty as a condition precedent to recovery therefor, has no application to a case where the buyer is suing for breach of warranty of title. We said then that we had not been referred to any case, and had not found any, in which that section had been invoked for failure to give notice of breach of warranty of title.

In a petition for rehearing filed by the respondent, our attention is called to the case of *Old Pueblo Motors, Inc., v. Ysias Abarca,* 37 Ariz. 29 (288 P. 666), with the statement that it holds that such notice is a necessary condition precedent in this character of case. A reading of the opinion in that case discloses that the construction of the cited section (which is the same as § 49 of the Uniform Sales Act) was not involved, but that the sole question decided was, that in an action for breach of warranty of title, before a buyer can rely on a judgment in favor of one claiming the goods by paramount title, as binding upon the seller, he must allege and prove that the seller had been given notice of the adverse claim, and an opportunity to defend against it. This decision accords with established principles, but as there was no claim of *res adjudicata* in this case it is not in point here. That the buyer is not bound to await legal action against him before surrendering the goods, there can be no doubt. If satisfied of the insufficiency of his vendor's title, and that the true owner may recover his property in an action, he may surrender it and recover his damages in an action against his vendor by affirmatively establishing that his vendor was without title: I Williston on Sales, (2d Ed.) 427, § 221.

The petition presents nothing else that was not heretofore argued and carefully considered by us, and

requires no further discussion other than to say that counsel for respondent labors under a misapprehension in assuming that we hold that the sale of an automobile is not governed by the provisions of the Uniform Sales Act. Nothing in the opinion warrants that assumption.

We adhere to our former opinion, and the petition for rehearing is denied.

BEAN, C. J., and BAILEY and RAND, JJ., concur.