[No. 30758.  Department Two.  July 28, 1949.]

C. R. O'CONNOR, *Respondent*, v. L. TESDALE, *Appellant*.[1]

[1]Reported in 209 P. (2d) 274.

*Marion Garland, Sr., Marion Garland, Jr.* and *Frank Hunter*, for appellant.

*Frederick B. Cohen* and *Jack Rowles*, for respondent.

ROBINSON, J.—On April 1, 1945, C. R. O'Connor, respondent in this action, purchased a dairy from L. Tesdale, appellant. Attached to the warranty bill of sale was a list of the equipment sold in connection with the transaction. Among the items on this list was one Sealright bottle hooder, which should not have been included therein, as it was not the property of appellant, but was under lease to him. Whether it was included through the fault or oversight of the seller or the buyer, was a matter of dispute. The only testimony on the point was given by the parties themselves, and was so contradictory that the trial court indicated inability to resolve it in favor of either of them.

According to respondent, he first learned that he had no title to the bottle hooder about the middle of July, 1945, when a representative of the lessor of the machine appeared at the dairy and the following took place:

"A. Mr. Fred Winglin of the Monroe's Dairy Supply from Portland came down and I was bottling milk at the time and he talked about some of the supplies he was going to send or had in mind. Then he said, 'By the way, where is the lease on your hooding machine? I am going to have to write another lease. The Oswego Falls Corporation has instructed us to make out a new lease.' I said, 'What if I don't sign it?' He said, 'Then, we'll just have to take the machine—that is all.' I said, 'I bought the machine—have a bill of sale—and you say you will take it away from me!' So, he told me that they weren't making those machines at the present time; that they couldn't replace it, and that perhaps as long as the Standard Dairy operated as such, perhaps this machine would remain there. In addition, if he took it away from me, it would mean there would be no use for the small-top bottles, for which that machine went out. It would mean I'd go out of business, if I had a new machine. Q. Did you sign a new lease, then, at that time? A. Yes, a temporary, thirty-day lease."

Appellant subsequently executed, and respondent signed, the following assignment of the lease:

"Standard Dairy                                        July 27, 1945
  1502 9th Ave.
  Longview, Washington
"Gentlemen:

"The undersigned does hereby assign to you its interest in the lease from Oswego Falls Corporation dated October 11, 1941 of one type HT5HD Sealon Cap Applying Machine, Serial No. 450. A copy of said lease is attached as exhibit A and made a part hereof. The machine was installed in the dairy of the undersigned on February 18, 1942.

"As successor to the dairy business of the undersigned and recipient of its assets you will continue operation of said machine at the same location.

"In consideration of such assignment, you assume and agree to pay rent for extensions of the lease beyond the three year term at the annual rate stated in the lease, and

agree to be bound by all terms and conditions of said lease.

"It is understood that the three (3) year term of said lease expired February 18, 1945 and that your right to continue use of the machine beyond that date is subject to Oswego Falls Corporation's right of termination upon thirty (30) days notice as provided in the 11th paragraph of said lease.

> "Very truly yours,
> STANDARD DAIRY
> By L. Tesdale, President.

"Agreed to Oct. 25, 1945
  STANDARD DAIRY
  By C. R. O'Connor
"Accepted November 16, 1945
  OSWEGO FALLS CORPORATION
  By C. M. Lussier, Treasurer"

The terms of the original contract of lease had provided for $1,675 rental for three years, payable $65 for the first month and $46 for subsequent months. At the time respondent took possession of the machine, this sum had all been paid. The contract provided that the lease could be extended by mutual consent of the parties upon payment by the lessee of $25 additional annual rent. Respondent testified that he made these payments annually, and that he remained in possession of the machine for over a year.

On August 1, 1946, respondent resold the dairy. The Sealright hooding machine was inadvertently listed in the bill of sale given by respondent to the new purchaser. As a result, respondent was forced to pay $1,100 to settle the lawsuit which would have resulted from this breach of warranty of title to the machine. He subsequently brought this action to recover for appellant's breach of warranty to him in connection with the first sale of the dairy. Appellant's answer alleged, by way of affirmative defense, that, at the time of this sale, respondent well knew that he was only receiving the machine in accordance with the terms of the lease, and prayed that the bill of sale be reformed to speak the true intent of the parties. The trial court found for respondent and awarded damages in the amount of $1,100.

Appellant contends that respondent has not sustained the burden of proof necessary to establish his cause

of action. The evidence shows, however, that there was a written bill of sale in which appellant warranted title in the hooding machine to respondent. Appellant admits he signed this bill of sale, although the evidence also shows that he had no title to the property in question. The only evidence appellant introduced to contravene the express wording of the bill of sale was his own testimony, to the effect that the parties understood that the hooder was under lease, and that it had only been included in the list of equipment sold by reason of someone's mistake, whose he did not know. No supporting witnesses were produced by appellant to back up his claim, and respondent, of course, denied it and claimed that he believed he was acquiring good title to the hooder. Under such circumstances, we are of the opinion that respondent sustained his burden of proof, and that appellant's evidence was not sufficiently clear or convincing to overcome it.

Appellant argues, however, that, in signing the assignment of the lease of the bottle hooder and thereby accepting the lease, respondent waived his rights to proceed against appellant for breach of warranty in the bill of sale. Waiver, however, has often been defined as an intentional relinquishment of a known right. *Gafford v. Globe Transfer & Storage Co.*, 71 Wash. 204, 128 Pac. 228. In order to show a waiver, the existence of the intent to waive must be made clearly to appear. *Hopkins v. Northwestern National Life Ins. Co.*, 41 Wash. 592, 83 Pac. 1019. Here, respondent testified that, had he not agreed to accept the lease, he would have had to surrender the machine, which was essential to the operation of his dairy. There is no suggestion that, in accepting it, he had any intention whatever of relinquishing any rights he might have as a result of the breach of warranty of title in the original sale.

Nor can his acceptance of the lease be made the basis of an estoppel against him. For, as this court said, in *Butler v. Supreme Court of Foresters*, 53 Wash. 118, 125, 101 Pac. 481, 26 L. R. A. (N.S.) 293:

"But while this is true of what an estoppel is, in the abstract, the party pleading it must show that he has been injured by reason of the acts of the party which he claims to be an estoppel, by reason of having relied on the representations of the person sought to be estopped, so that his position with reference to the matter in hand has been changed to his disadvantage."

No reliance or change of position was shown by appellant here.

■ For a similar reason, he cannot claim that respondent was guilty of laches in delaying two years in prosecuting his claim. We said, in *Luellen v. Aberdeen*, 20 Wn. (2d) 594, 602, 148 P. (2d) 849:

"The doctrine of laches is a creature of equity and is grounded upon the principles of equitable estoppel. It does not bar an action short of the statute of limitations applicable thereto, unless it is made to appear that, by reason of the delay in asserting a claim, the other party has altered his position or has been otherwise injured by the delay."

However, appellant argues that § 49 of the uniform sales act may be invoked to preclude respondent's recovery in this action. This section, found in Rem. Rev. Stat., § 5836-49 [P.P.C. § 854-33], reads as follows:

"Acceptance does not bar action for damages. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Appellant points out that respondent was aware of the alleged breach in July, 1945, but that no intimation of a claim came to appellant's attention until a letter from respondent's attorney was received by him in August, 1945. He argues from this that notice was not given within the "reasonable time" required by the statute. But before the problem of whether this notice was or was not given within

the statutory "reasonable time" arises, it is necessary to determine whether this section of the sales act applies to a breach of warranty of title.

Apparently, the only case in which this problem has been treated is *Maxwell Co. v. Southern Oregon Gas Corp.*, 158 Ore. 168, 74 P. (2d) 594, 75 P. (2d) 9, 114 A.L.R. 697. In that case, it was held that the provision of § 49, requiring the buyer to give notice to the seller of breach of warranty as a condition precedent to recovery therefor, does not apply to a buyer's suit for breach of warranty of title. In the course of the opinion, it was pointed out that this section has to do with the "sale of goods, whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances which causes money damages to the vendee"; or to a failure to deliver on time. "But we have not been referred to any case," the court stated, "nor have we found any, in which this section has been invoked for failure to give notice of breach of warranty of title."

In order to explain this situation, the court then discussed the reasons for the adoption of this section, quoting 2 Williston on Sales (2d ed.), § 484, to the effect that many states held at common law that acceptance of title necessarily involved a release of the seller's liability from certain of his contractual obligations in regard to the goods. In the course of a further analysis of the common law on this subject, the court continued:

"The classes of the seller's 'obligations in regard to goods' are discussed by Mr. Williston in the succeeding sections of his work. They relate to quality, quantity, delay in performance, and kindred subjects. As the supreme judicial court of Maine pointed out in *Morse v. Moore*, 83 Me. 473, 481 (22 Atl. 362, 13 L.R.A. 224, 23 Am. St. Rep. 783), the fact of acceptance 'raises considerable presumption that the article delivered actually corresponded with the agreement', and 'is some evidence of a waiver of any defect of quality, even if the article did not so correspond—evidence of more or less force according to the circumstances of the case'. See, in this connection, *Morse v. Union Stockyards Company*, 21 Or. 289, 298 (28 P. 2, 14 L.R.A. 157). 'The Sales Act', Willis-

ton concludes (P. 1271), 'for this question of fact substitutes a rule of law. The merits of the statutory rule are its certainty and the limitation of time· for disputing ·the correctness of the seller's performance.'

"So far as we are aware, it has never been held or even suggested that a presumption arises from the acceptance of merchandise that the seller's title is good, or that such acceptance is some evidence of a waiver of a defect in the title. It seems to be reasonably clear that this statute was only intended to apply to those cases in which, under the common law, the fact of the acceptance of the goods might be said to have some bearing on the validity or the good faith of the buyer's claim of breach of warranty. We think, therefore, that no duty devolved upon the plaintiff to give the notice called for by section 64-509, Oregon Code 1930, and that the failure to give such notice is no obstacle to its right to recovery."

In the most recent edition of his work on Sales, Professor Williston, who, having drafted the uniform sales act, must be ·regarded as the chief authority thereon, refers to the *Maxwell Co.* case, but does not give his opinion as to its soundness, merely stating that the problem it presents is "troublesome." 3 Williston on Sales (Rev. ed.) 41, § 484b.

▪ However, we find the reasoning of the case quite persuasive, and are, therefore, of the opinion that this section· does not apply where the breach alleged is that of warranty of title; and that, so long as the buyer brings his action for such breach within the six-year period of the applicable statute of limitations (Rem. Rev. Stat., § 157, subd. 2 [P.P.C. § 73-5]), the fact that he did not give the seller notice of the defect of title "within a reasonable time" will not, under such a state of facts as we have here, bar his recovery.

The trial court awarded damages to the respondent in the sum of $1,100, this being the sum he was forced to pay to the new purchaser of the dairy upon the latter's discovery that respondent had no title to the hooding machine. Appellant asserts that, in so doing, the court applied an erroneous measure of damages, as this second sale was entirely distinct and separate from the one involved in the case at bar. At the time respondent inadvertently included the hooder on the bill of sale to the new purchaser, he had been aware,

for over a year, that he did not own it, but that he held it only under lease. Therefore, appellant argues, any damages which respondent suffered as a result of this breach of warranty of title were due entirely to his own error and cannot be recovered from appellant.

■■ We agree with appellant that, if the court, in awarding respondent $1,100, based that award on what respondent had to pay to the new purchaser as a result of his own breach of warranty, it was in error. Clearly, respondent may only recover what he lost as a direct result of appellant's breach. But, in our opinion, the correct measure of his damages, computed as of the time of the first sale, is the difference between what the price for the sale of the dairy from a willing seller to a willing buyer would have been if good title had been in the seller, as against the price of the dairy with the hooding machine on the lease.

Respondent testified that this amount was $1,250. It is true that respondent was an interested witness; but the only evidence that appellant offered to offset his testimony was his own assertion that the machine was worth more to respondent under lease than it would have been had he owned it outright. In view of the fact that the lease, at the time respondent took over the dairy, was terminable upon thirty days' notice by the lessor, this contention is difficult to understand, and the trial court obviously did not find it convincing. In awarding damages, therefore, the only sum which the trial court had properly before it was $1,250, which, under the evidence, it would have been justified in selecting. It chose instead $1,100; and, this being a lesser sum than it might properly have awarded, appellant has no cause to complain. *Lagomarsino v. Pacific Alaska Nav. Co.*, 100 Wash. 105, 170 Pac. 368.

We find no merit in the appellant's remaining contentions.

The judgment is affirmed.

JEFFERS, C. J., SCHWELLENBACH, and GRADY, JJ., concur.

SIMPSON, J., concurs in the result.